## HEAD *v.* HORN *et als.*

HORN loaned $5,000 to six out of nine shareholders in the Volcano Water Company, taking their note, with interest at ten per cent. per month, and a mortgage executed by them, as individuals, on their interest in the company's ditch, etc. Subsequently, he made a like loan of $5,000, with like interest; and one T. at the same time made a similar loan of $4,000. Later still, the corporation recognized these loans, and in consideration thereof, and of a further loan of $8,000 by Horn, executed to Horn a note of $21,900, and to T. a note of $9,679, with mortgages upon the corporate property, the ditches, etc.—the former notes and mortgages being canceled. Head, a creditor of the corporation, sues to set aside, as fraudulent, a decree foreclosing these last mortgages : *Held,* that the recognition of these debts as those of the corporation, by the stockholders and corporate authorities, in the absence of any showing of fraud or supicious circumstances, is *prima facie* sufficient to rebut an inference of fraud arising from the mere form of the original transaction, particularly as the Court finds that the arrangement was not made to hinder, delay or defraud creditors, Horn and T. supposing all along that the corporation was bound to them ; that the money loaned went immediately into the treasury of the corporation, and was used for its purposes ; that no credit was given the stockholders borrowing the money on the books ; that it was regarded as one of the debts of the corporation when there seemed to have been no motive for fraud ; and the loan was effected by those holding the largest portion of stock.

APPEAL from the Sixteenth District.

After the remittitur from the Supreme Court in the case of *Horn v. The Volcano Water Company,* reported in 13 Cal. 62, the District Court made a decree foreclosing the mortgage of Horn ; directing the sale of the company's water ditch, etc., and application of the proceeds, first, to the payment, *pro rata,* of said mortgage, and of a mortgage executed to Thompson and assigned to one Barney ; and second, to the payment of the intervenors in that suit.

Plaintiff, as owner of the property of the company by purchase at Sheriff's sale on execution upon judgments against the company, now files his bill against the company, Horn and Barney, to set aside the above decree.

The company appeared in the action, but made no answer. The defenses set up by the defendants Horn and Barney are :

1. That the company had not made an assessment on the shares of the stockholders.

2. That the money was not loaned to the six shareholders for the purposes as alleged in the plaintiff's complaint.

3. That they had no knowledge of the corporation being insolvent at the time they took said mortgages, on the tenth day of May, 1856.

4. That the mortgages were not made without consideration, or to hinder, delay or defraud the creditors of said company.

5. That the mortgages were not made for a greater amount than was justly due.

For further facts, see *Horn* v. *Volcano Water Company, infra,* and the findings of the Court, as follows, to wit:

1. On the sixth day of June, 1855, the "Volcano Water Company" was a corporation duly incorporated under the laws of this State, having for its object the digging of a ditch to convey certain waters to Volcano and other places, for mining purposes.

2. On or about the first day of September, A. D. 1855, it became necessary to raise money to carry on the works of the company. Six of the owners had paid nothing into the company, while those representing the other half of the shares of stock had paid an amount equal to $5,000, by work and materials furnished and done for the company.

3. To borrow this money, it was agreed that one-half of the ditch of the company should be mortgaged; and six of the shareholders, on the third day of September, 1855, made a joint mortgage upon one undivided half of the ditch, and also executed a note, bearing ten per cent. interest per month, compounded monthly, signed by themselves in their individual capacity, and payable to defendant Horn.

4. Afterwards it became necessary to raise other moneys, and the same shareholders made another mortgage to the defendant Horn for $10,000, and gave their note for that amount. By the last transaction $5,000 were obtained, and the former note and mortgage were canceled. At the same time $4,000 were borrowed of one J. D. Thompson, who also received the note and mortgage of the same six shareholders. The rate of interest agreed to be paid to Horn was ten per cent. per month, compounded monthly, and to Thompson ten per cent. per month.

5. All the money so borrowed was paid into the hands of the Treasurer of the company, and was applied and paid out for the company, but no credit was ever given to the shareholders therefor. At the time Horn and Thompson loaned their money, each of them thought, and had been led to believe, that they were loaning their money to the corporation, and taking the corporation property as security therefor; and the officers and shareholders of the company believed and intended that such were the terms of the loan.

6. On the tenth day of May, 1856, the interest on the two mortgages to Thompson and Horn was computed, and a new note was given to each for the entire amount of principal and interest, and mortgages were given to secure the payment. In computing the interest, compound interest was allowed to the Thompson note from the day of its date to the day of its cancellation. This was done for the purpose of making the *pro rata* payments equal between Horn and Thompson, as it was agreed that payments should be so made.

These last notes and mortgages were duly and properly signed by the trustees of the corporation, and are the mortgages upon which the decree was had, which is now sought to be set aside.

7. Before the making of these two last mentioned notes, the corporation had become indebted to the parties who afterwards obtained judgments, and under which the complainant became purchaser and owner of the property.

8. At the time of making the two last mentioned notes, the corporation was insolvent, but was not so understood or considered; and the Trustees, and Horn, and the holder of the Thompson note all supposed the company to be solvent.

9. The notes and mortgages sued on, and which now are the cause of this suit, were not made to defraud, hinder or delay creditors, but on the contrary, it was supposed that the company was not insolvent; and in the arrangement for the canceling of the old and substituting of the new mortgages, it was agreed that defendant Horn should furnish $8,000 more money within a certain short time, which it was supposed at the time would be amply sufficient to pay all other indebtedness; and under the arrangement defendant Horn did furnish $5,100 in liquidation of the company's liabilities.

10. The notes originally executed by the six shareholders were the individual notes of the six who signed them, and the mortgages were utter nullities. If intended to operate as corporate mortgages, they were not executed by the proper parties. If intended to operate as individual mortgages, they were ineffective, because the mortgagors could no more mortgage the corporate property than a stranger could have done. But I find that this was a mistake of law, and that there was not any intention to wrong or defraud creditors.

11. The mortgage and note now held by Barney were transferred to him after execution and before due, as I judge by the fact, that in the mortgage to Horn a blank was left for the name of the party to whom it was payable.

Upon these findings the Court below dismissed the bill. Plaintiff appeals.

*H. Cook*, for Appellant.

I.   The consideration for which the mortgages to Horn & Thompson were given, was for the debt of third persons, viz: six of the members of said corporation, at a time when said corporation was largely in debt and insolvent, which was a fraud upon the creditors of said company.

A corporation can only act by a Board of Trustees, within the object and purposes of the company, which must be strictly pursued.   (Wood's Dig. 119, sec. 1–7; 2 Kent's Com. 344–6; Angel & Ames, 311; *Smith* v. *Morse*, 2 Cal. 524.)

Fraud is artifice by which the rights or interest of another is injured; and the general rule is, that particular persons, in contracts and other acts, shall not only contract *bona fide* between themselves, but shall not contract *mala fide* in respect to other persons who stand in such relation to either as to be affected by the contract, or the consequences of it; (1 Story's Eq. Jurisp. sec. 333) and all agreements, and other acts of parties, which operate directly or virtually to delay, defraud, or deceive creditors, are frauds in fact and in law.   (Id. secs. 223, 224, 328, 333, 349, 351, 358, 360.)

II.   The statute makes all deeds of gift, all conveyances and

Head *v.* Horn.

all transfers or assignments, verbal or written, of goods, chattels, or things in action, made in trust for the use of the person making the same, void as against creditors existing at the time. (Sec. 11, Woods' Dig. 105.) Whether they were made in trust for themselves or a voluntary conveyance, without consideration, either makes them void as against the creditors. (*Horn* v. *Volcano Water Co.*, 13 Cal. 62, 71, 72.) They were made to secure themselves for the stock they had paid in, and to hinder, delay, and defraud creditors.

The corporation was insolvent. The debts for which the mortgages were given were not the corporation's, the notes were against six members. They only could have been made to pay. Some part was for scrip not due or payable in money, and part for no consideration. The notes were held by different persons, one by Horn and one by two of the trustees and Barney. They all met by agreement at one and the same time and place to make the change; this shows the intention to delay and defraud. (1 Story, Eq. Jur. 214, 215, secs. 188, 189; 3 Greenlf. on Ev. sec. 254; 1 Stark. on Ev. 461; *McDaniel* v. *Baca*, 2 Cal. 326, 339; *Taaffe* v. *Josephson*, 7 Id. 352, 355; 10 Id. 227; *Alvarez* v. *Brannan*, 7 Id. 503; Id. 229, 230; *Riddell* v. *Shirley*, 5 Id. 488.)

III. The mortgages are void for want of consideration; if only a part of the consideration is fraudulent, they are void as against creditors. (*People* v. *Houghtaling*, 7 Cal. 348, 350; *McKenty* v. *Gladwin, Hugg & Co.* 10 Id. 227, and cases cited; *Seales et al.* 13 Id 76; 10 Bacon's Ab. [title void] 378.)

*P. L. Edwards*, also for Appellant.

*Monson & Sunderland*, for Respondents, argued that the evidence sustained the findings, and they the judgments; and to the point that this Court will not review the findings except where they would review a verdict cited *Hoppe* v. *Robb*, 1 Cal. 373; 17 Barb. 388.

BALDWIN, J. delivered the opinion of the Court—FIELD, C. J. concurring.

This was a bill filed to set aside a mortgage decree of foreclosure

and sale, on the ground of fraud; the plaintiff claiming that the mortgage was made to secure a debt of the individual stockholders of the Volcano Water Company, for which the corporation was not bound, and that this was done when the corporation was insolvent, and with the object of defrauding its creditors, of whom the plaintiff is one. Issue having been joined upon this question of fraud, much testimony was taken on both sides. The Court found against the plaintiff upon this question. The plaintiff below appeals from the judgment, assigning for error that the evidence does not justify the findings.

It is scarcely necessary to repeat what we have so often said, that we do not weigh proofs in such cases, but require a very manifest and apparent error to be shown on the part of the Judge trying the cause, before we reverse his finding upon a question of fact, and this rule is particularly applicable to questions involving fraud or the imputation of it.

In the present instance, after examining attentively the evidence, we see no ground for interfering. It is very true that the first and second mortgages of Horn were made in the name of certain persons apparently in their individual characters, and binding their interests in the corporate property—if obligatory at all—but there is proof to show that the money borrowed went to the corporate purposes, and was applied to the payment of the corporate debts; and there was some proof tending to show that the corporate authorities recognized this as a corporate debt, and that Horn understood it so at the time of the loan; and afterwards the corporation made a formal and express recognition of it, as such, and in consideration of this indebtedness and some water-scrip of the corporation, and an agreement for a further advance of $8,000—a large portion of which was afterwards paid—the mortgage of Horn was taken. There is no proof of any fraud or guilty knowledge on the part of Horn; and it would be difficult, under these circumstances, to hold his taking a mortgage to secure the repayment of money which he advanced upon the supposition, induced by the parties, that the company was bound to repay it, and for which they got the full benefit, is such a fraud as to avoid the security in favor of a general creditor of the corporation.

The Court finds expressly that this arrangement was not made to hinder or delay creditors.    On the contrary, it seems to have been supposed that it would prove effectual for the relief of the corporation from its pressing liabilities, and enable it to go on with its business.    The recognition of these debts as those of the corporation by the stockholders and corporate authorities, in the absence of any showing of fraud or suspicious circumstances, would seem to be *prima facie* sufficient to rebut an inference of fraud arising from the mere form of the original transaction, especially when this recognition is accompanied by the facts found by the Judge, that the money went immediately into the treasury, and was disposed of by the corporation for its own purposes; that no credit was given those stockholders on the books; that it was regarded as one of the debts of the corporation, when there seemed to have been no motive of fraud; and when the loan was effected by those who held the largest portion of the stock.    At all events, we do not feel authorized to interfere with the decree of the District Court under these circumstances.    The same observations apply substantially to the case of the mortgage of Thompson.

It is not necessary to notice other points.

Judgment affirmed.