[No. 8114]

DILLON ADMINISTRATRIX v. MYERS ET AL.

1.   CORPORATIONS—*Manufacturing—Mortgage of Plant Without Consent of Stockholders—Effect—Statute Construed.*   Section 865 of the Revised Statutes was intended for the protection of the stockholders, and not of the public. Where the stockholders make no objection to the action of the directors, subsequent creditors of the corporation will not be heard to complain. The opinion in *Carlsbad Co. v. New*, 33 Colo. 389 is not authority for the opposite conclusion. (499, 508)

The provision of the statute prohibiting the encumbrance of the plant does not concern the public at large. No principle of public policy is involved; no wrong is done to any human being by an encumbrance made without the consent of the stockholders, save to

the stockholders themselves; as others are not concerned they have no right to avail themselves of the irregularity. (499)

2. ——*Ultra Vires.* A contract fully executed will be allowed to stand though beyond the powers of the corporation. (502)

3. STATUTES—*Construction—Void or Voidable.* Void, in a statute intended for the protection of a particular class construed to mean voidable, and only at the instance of those of the protected class. (498, 499)

*Error to El Paso District Court.*—Hon. JOHN W. SHEAFOR, Judge.

Mr. ROBERT KERR, for plaintiff in error.

Mr. FRANKLIN E. BROOKS, and Mr. MICHAEL B. HURLEY, for defendants in error.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The Rocky Mountain Can Company, a Colorado corporation, on the 5th day of March, 1908, borrowed from John K. Dillon the sum of $4,000, and thereupon executed and delivered to said Dillon its promissory note in that amount, and to secure the payment thereof, executed and delivered to the Public Trustee of El Paso county, its trust deed covering certain of its property, which trust deed was immediately filed for public record.

The note was payable two years after date. Interest payments were made for one year, but the corporation thereafter made default in its interest payments, and taxes, and as provided in the trust deed, and on the 19th day of October, 1909, the premises were sold at Public Trustee's sale. Dillon purchased the property at such sale for the sum of $4,291.91, being the amount due on the note, with interest and costs. Thereafter the Public Trustee issued his trustee's deed conveying the premises to Dillon. The proceedings in the foreclosure sale,

and in the issuance of the deed, were in all respects regular. The contention of the defendants in error, is that the trust deed, so executed, was not only void, but wholly without effect, as against all persons, and that there can be no relief in equity to innocent injured persons, in such a case.

Before the execution and delivery of the trustee's deed, but after the expiration of the period for redemption, this action was instituted.

The complaint alleged in substance that the name of the corporation was changed, after the transaction with Dillon, to "The Rocky Mountain Manufacturing Company," and that on September 29, 1909, the plaintiffs, Myers and McDonald, obtained a judgment against the corporation in the sum of $2,186.03, and that a transcript thereof was on the following day, filed with the County Clerk and Recorder.

It is then alleged that the corporation executed and delivered the said trust deed unlawfully and without authority, in that such corporation was a manufacturing corporation, and the trust deed was made without the consent of the stockholders. The prayer was for the cancellation and annulment of the trust deed and all proceedings under it. Dillon died during the pendency of the action, and his widow, Florence A. Dillon, as administratrix, was substituted as party defendant.

It clearly appears that the transaction between the company and Dillon was in perfect good faith upon the part of Dillon at least. The sum of money which the trust deed was given to secure was received by the company and used by it in the conduct of its business, and in the improvement of its property. Neither the loan, nor the trust deed to secure it, was authorized at any meeting of the stockholders of the company. It appears that the officers of the company believed at the time, that

the corporation had power under its charter to execute the trust deed, without the consent of the stockholders. Neither the corporation nor any stockholder thereof, has ever questioned, and does not now question, or object to the validity of the transaction.

The plaintiffs below, defendants in error, rely upon that portion of Section 865 Rev. Stat. 1908, as follows:

"The board of directors or trustees of a mining or manufacturing corporation shall not have power to encumber the mines or plant of such corporation, or the principal machinery incident to the production from such mine or plant until the question shall have been submitted at a proper and legal meeting of the stockholders and a majority of all the shares of stock shall have been voted in favor of such proposition; and any mortgaging or incumbering of such property, without such consent shall be absolutely void, and the vote upon such proposition shall be entered on the minutes of the corporation."

The trust deed covered the building of the company erected for a proposed manufacturing plant.

1. The plaintiff in error, contends that the corporation was not a manufacturing corporation within the meaning of the statute, but on the contrary that its real purpose was to conduct a general real estate business, and with express power conferred by its charter, to do the very thing it did do in this instance.

The purposes for which the corporation was organized as recited in the articles of incorporation, are:

First:—To buy, sell, exchange, hold, own, acquire, and encumber real estate and personal property, to buy, sell, exchange, hold, own, acquire and encumber a certain invention for improvement in oil and gasoline cans under Latest Patent dated January 10, 1905, No. 779, 983, and any and all improvements that may be made to or upon said invention within the states of Colorado and Wyoming and the territory of New Mexico.

Second:—To erect and operate manufactories for the purpose of manufacturing oil and gasoline cans, to sell and deal in said cans after the same are manufactured, to manufacture and sell said cans according to any improvements that may be made upon the invention hereinbefore mentioned.

Third:—To mortgage, encumber and pledge the real estate and personal property and privileges or franchises belonging to the said company, or any part thereof, for the funds with which to purchase real estate, erect buildings and manufacture and deal in said cans, and also for the purpose of acquiring other property.

Fourth:—To pay cash or issue full-paid and non-assessable stock for and in exchange for real and personal property, to manufacture and deal in other articles than the said cans hereinbefore mentioned, and to do a general manufacturing business, in other articles similar to said cans, and generally to prosecute, do and perform any and all business and to do any and all things that may in any wise be necessary, convenient, incidental and appurtenant, or either, to the powers, purposes or objects for which this company is organized; and to do and perform any and all other acts and things in connection therewith which a natural person might or could do, and which a corporation is not prohibited by law from doing, as the Directors of our said Company may deem expedient and proper.

The good faith purpose of the incorporators to engage in a legitimate manufacturing enterprise may be seriously questioned. The corporation was organized by a firm of real estate dealers. Its original capital stock authorized by the charter was $6,000, but before it transacted any business, this was increased to $300,000. The conduct of the corporation makes it appear to have been a promotion scheme pure and simple. Its first and prin-

ciple operations were to trade its corporation stock for real estate of any kind, and located in no particular state or locality.

It manufactured none of the cans mentioned in the charter. Its manufacturing operations were confined to the plating of certain wares, for use in hotels and similar places, and the making of lamps, trays, etc., and this in a limited way. It contracted with the plaintiffs below for the right to manufacture iceless refrigerators, upon the basis of a royalty, and upon which plaintiffs seem to have had a patent, or some rights under a patent, and it is upon this contract that the plaintiffs obtained the default judgment upon which they rely, and which judgment was rendered after the company had failed, and its officers had left the county. But it did not manufacture any such refrigerators in its building, though it had some samples made by others. It constructed a large building and installed certain machinery, which latter seems to have been removed afterward, by those who sold it to the company, because of non-payment, and which machinery was never in operation. The whole scheme was plainly either in fraud, or it was an iridescent dream.

It may be assumed for the purposes of the case, but not decided, that the corporation was technically a manufacturing corporation, and that the building so encumbered was its plant. What has been said is for the purpose of throwing light upon the equities of the parties rather than to determine this question.

It will be seen that the trust deed was executed and recorded on the 5th day of March, 1908, and that plaintiff's judgment was rendered September 29, 1909, or about eighteen months afterward.

2. The question remaining to be considered is as to what are the rights of the parties under the state of facts presented, conceding the company to have been a manu-

facturing corporation. The case of *Beecher v. Marquett Rolling Mill Co.*, 45 Mich. 103, 7 N. W. 695, involved a similar statute to ours. That was an action to foreclose a mortgage executed by a corporation without the consent of the stockholders, and the provision of the statute considered, was as follows:

"That no alienation, diversion, sale or mortgage of any or any part of the mine works, real estate or franchise of any corporation mentioned in the first section of this act shall have any force or effect, or pass any title thereto, or interest therein, unless expressly authorized by the vote of three-fifths in interest of the entire stock of said company actually present or legally represented at some meeting of stockholders called and notified."

Judge Cooley, the writer of the opinion, there said:

"Courts often speak of acts and contracts as void when they mean no more than that some party concerned has a right to avoid them. Legislators sometimes use language with equal want of exact accuracy; and when they say that some act or contract shall not be of any force or effect, mean perhaps no more than this: That at the option of those for whose benefit the provision was made it shall be voidable, and have no force or effect as against his interests. This was found to be the meaning in the mind of the legislature in enacting the Massachusetts usury law. It was declared in most positive terms that mortgages on usurious considerations should be 'utterly void;' but a consideration of its purpose; which was to protect debtors against the enforcement of unconscionable demands, made it clear that it never was intended that strangers to the title should be at liberty to question such a mortgage.—*Green v. Kemp,* 13 Mass. 515, (7 Am. Dec. 169). Mr. Justice Bayley in one case intimated that the word void in a statute might be construed voidable where the provision is introduced for the

benefit of parties only, but not where it is introduced for public purposes and to protect those who are incapable of protecting themselves (*Rex v. Hipswell,* 8 B. & C. 466, 470), and though this distinction has been questioned (*Rex v. St. Gregory,* 2 Ad. & El. 99, 107), much good reason lies at the foundation of it. If it is apparent that an act is prohibited and declared void on grounds of general policy, we must suppose the legislative intent to be that it shall be void to all intents; while if the manifest intent is to give protection to determine individuals who are *sui juris,* the purpose in sufficiently accomplished if they are given the liberty of avoiding it. A statute would strike blindly if the letter alone were to be regarded, not the spirit. A statute declares that certain indentures not made as by the statute provided should 'be clearly void in law to all intents and purposes;' and it was nevertheless held that, if acted upon, the apprentice gained a settlement thereby.—*St. Nicholas v. St. Peter,* Strange 1066. And in Ohio a purchase at a judicial sale by one who acted as appraiser of the property, though the statute declared it should be 'considered fraudulent and void,' was held to be voidable only on an interposition or proceeding by a party in interest, directly for the purpose of avoiding it.—*Terrill v. Auchauer,* 14 Ohio N. S. 80. This subject is considered at length and many authorities examined in *State v. Richmond,* 26 N. H. 232, to which we refer.

The statute now under consideration was passed to protect the interests of stockholders in mining companies. It intends that their mining property shall not be conveyed away or mortgaged except by their deliberate action after they have been notified of a proposal to do so, and have had time to deliberate upon and fully consider it. But the matter does not concern the public at large; no principle of public policy is at stake; no wrong,

direct or indirect, is done to any human being, if conveyance is made or mortgage given without the exact notice required unless it be a wrong to the stockholders themselves. And as others are not concerned, why should the statute give them the right to raise questions of regularity which the stockholders elect to waive? We are satisfied such was not its purpose.''

The doctrine thus announced, has been adopted and the reasoning approved by text writers and by the courts, now in all jurisdictions, though the contrary has been held in some instance, notably in the earlier cases in *California Milling Co. v. Kennedy,* 81 Cal. 356, 22 Pac. 679; *McShane v. Carter,* 80 Cal. 310, 22 Pac. 178.

Counsel for defendants in error, cite *Williams v. Gaylord,* 186 U. S. 157, 46 L. Ed. 1102, 22 Sup. Ct. 798. This was not the independent judgment of that court. The case arose in California and the decision was based upon the rule of plenary power of the state court, to construe a statute of the state, and it was therefore held that the case of *McShane v. Carter, supra,* was controlling in that case.

The Circuit Court of Appeals in the case of *Louisville Trust Co. v. Louisville N. A. & C. Ry. Co.,* 75 Fed. 433, 22 C. C. A. 378, Judge Taft speaking for the court said:

''Referring to the same proviso as that considered in the Zabriskie Case, the supreme court of New York, in *Connecticut Mutual Life Ins. Co. v. Cleveland, etc., R. Co.,* 41 Barb. 9-24, said that 'these provisos were intended for the protection of the shareholders, and relate rather, to the mode or manner of the execution of the power.' This view of the purpose and effect of such a provision is enforced by the construction put by the Supreme Court of the United States on a statute of Illinois much more emphatic and prohibitory in form than

that here in controversy, in *St. Louis, etc., R. Co. v. Terre Haute, etc., R. R.*, 145 U. S. 393, 12 Sup. Ct. 953, (36 L. Ed. 748. The act there provided that it should not be lawful for a railroad company of Illinois to lease a railroad in another state without having first obtained the written consent of all the stockholders of said roads residing in the state of Illinois, and any contract for such lease made without having first obtained said written consent should be null and void. Of this, the supreme court, speaking by Mr. Justice Gray, said: 'Although this statute in terms, declares that any such lease made without the written consent of the Illinois stockholders, 'shall be null and void,' it would seem to have been enacted for the protection of such stockholders alone, and intended to be availed of by them only. It did not limit the scope of the powers conferred upon the corporation by law, and excess of which could not be satisfied by estoppel, but only prescribed regulations as to the manner of exercising corporate powers, compliance with which the stockholders might waive, or the corporation might be estopped, by lapse of time or otherwise, to deny.' Mr. Justice Harland, at the circuit, took the same view of a similar statute in *Harvey v. Railway Co.*, 28 Fed. 169, 174.''

The court then quotes with approval the language of Judge Cooley in *Beecher v. Hill, supra*, heretofore cited. The principle announced in these cases has been recognized by this court. In *Denver Fire Ins. Co. v. Mc-Clelland*, 9 Colo. 11, 9 Pac. 771, 59 Am. Rep. 134, the court said:

''Corporations have the capacity to do wrong, and may overstep the limits placed by the law to their powers, and when they violate their charters in this respect their acts are illegal, but not necessarily void.—*Bissell v. Mich., etc., R. R. Co.*, 22 N. Y. 258. The plea of *ultra*

*vires* is not to be understood as an absolute and peremptory defense in all cases of excess of power without regard to other circumstances and considerations. The plea is not to be entertained where its allowance will do great wrong to innocent third persons.

*Bissell v. Mich., etc., R. R. Co.,* 22 N. Y. 258. Where a certain act is prohibited by statute, its performance is to be held void because such is the legislative will. So where the consideration of a contract is by law illegal, as where the cause of action arises *ex turpi*. But where the act is not wrong per se, where the contract is for a lawful purpose in itself, has been entered into with good faith, and fairly executed by the party who seeks to enforce it, we must assent to the doctrine of those authorities which hold that the excess of the corporate powers of the contracting party which has received the benefit of the contract is an unconscionable defense, which may not be set up to exempt from liability the party so pleading it. And such, we think, is the case before us."

The principle which would seem to control in the case at bar is admirably stated in the joint concurring opinion of Beck, C. J., and Helm, J., in that case.

It will be observed that there is a distinction usually made by the authorities, as between executory, and fully executed contracts, as applicable to the doctrine of *ultra vires*. It was said in *Fire Ins. Co. v. McClelland, supra,* that "The executed dealings of corporations must be allowed to stand when the plainest rules of good faith require."

It is said by Thompson in his work on corporations:

"It is a principle of universal application that whenever an illegal, immoral, or prohibited contract has been fully executed on both sides, the law will not lend its aid to either of the parties for the purpose of unraveling it and enabling him to recover what he may have lost

through it. In such cases the governing maxim is, *in pari delicto, potior est conditio defendentis.* When therefore, a contract with a corporation, the making of which is beyond its granted powers, has been fully executed by both parties, neither of them can assert its invalidity as a ground of relief against it."—Thompson on Corp., Secs. 6023-6024.

It is said by Bouvier, vol. 2, 1153, under the title of *ultra vires;*

"There is said to be a tendency of the courts based upon the strongest principles of justice, to enforce contracts against corporations, although in entering into them they have exceeded their chartered powers, where they have received the consideration and the benefit of the contract; *Railroad Co. v. Howard,* 7 Wall. 392, 19 L. Ed. 117; *National Bank v. Matthews,* 98 U. S. 621, (25 L. Ed. 188); see *Campbell v. Argenta Co.,* 51 Fed. Rep. 1; *Shuman Co. v. Fletcher,* 46 Kan. 524, 26 Pac. 951; and the rule that the charter of a corporation is to be construed strictly against the grantee does not apply to a case where the corporation seeks to repudiate contracts whereof it has enjoyed the benefits, or where such contracts are attacked by creditors after the corporation became insolvent; 57 Fed. Rep. 47; *Chicago Co. v. Union Pacific Co.,* 47 id. 22. The doctrine of *ultra vires,* when invoked for or against a corporation, should not be allowed to prevail where it would defeat the ends of justice or work a legal wrong; *Ohio, etc., Co. v. McCarthy,* 96 U. S. 258, 24 L. Ed. 693. The executed dealings of corporations should be allowed to stand for and against both parties, when good faith so requires; *Bissell v. Michigan, etc., Co.,* 22 N. Y. 258, 494; *Whitney, etc., Co. v. Barlow,* 63 N. Y. 62. Where a corporation has entered into a contract which has been fully executed on the other part, and nothing remains but the payment by the cor-

poration of the consideration, it will not be allowed to
set up that the contract was *ultra vires; Oil Creek, etc.,
Co. v. Pennsylvania Co.,* 83 Pa. 160. Corporations should
be restricted so far as courts can, in the exercise of their
powers, limit them; but the plea is not a gracious one,
that a contract which they have deliberately made, and
of which they have received the full benefit, is void for
want of power in them to make it."

The contract in the present case, between the com-
pany and Dillon, was fully executed. Clearly then under
the rule thus stated, the company cannot raise the ques-
tion of *ultra vires.* The plaintiffs below had knowledge
of the transaction involved, at the time of their dealings
with the corporation and upon which their judgment was
obtained. They became creditors subsequent to the de-
livery and recording of the trust deed.

It is also held that where a corporation has waived
or omitted to exercise the right to institute proceedings
to recover lands, even in case of fraud, such right does
not inure to the benefit of subsequent creditors or pur-
chasers, clearly not in case of a good faith transaction.—
*Graham v. Railroad Co.,* 102 U. S. 148, 26 L. Ed. 106. It
has been held also, that one holding a valid second mort-
gage, not made expressly subject to an invalid mort-
gage, cannot maintain an action for the cancellation of
the void mortgage, and thus to remove a cloud upon the
title.—*Commonweath v. Smith,* 10 Allen (Mass.) 448, 87
Am. Dec. 672.

In *Gordon v. Preston,* 1 Watts 385, 26 Am. Dec. 75,
it was said:

"Now the validity of this mortgage is unquestioned
by the corporation, even at this day, though its exist-
ence has all along been known to the corporate officers
whose duty it was to disavow it, had there been an intent
to contest it. The corporation then being satisfied with

it, who has a right to object?  *   *   *   Then, granting
the defendant as a judgment creditor, to have succeeded
to the rights and capacity of the corporation, his suc-
cession did not occur till after more than eight months
from the performance of the act, during all which time
the corporation was silent, though the absent members
had notice of the mortgage by the minutes.   At the
period of the defendant's succession, then the time for
objection had gone by, and if it had not, still even he
was quiescent till about the time of awarding the issue
in which the validity of the mortgage is drawn into ques-
tion.   To disaffirm it now, when every opportunity of ob-
taining any other security is lost, would be unconscion-
able; and the act, therefore, though originally unauthor-
ized, must be taken to have been subsequently ratified.''
—*Campbell v. Argenta, G. M. Co.* (C. C.) 51 Fed. 1;
*Head v. Horn,* 18 Cal. 211; *Boston & M. Copper Co. v.
Montana Ore Purchasing Co.* (C. C.) 89 Fed. 529; *Beach
& Weld v. Wakefield,* 107 Iowa, 567 (78 N. W. 688, 78 N.
W. 197); *Tyrell v. Cairo & St. L. Ry. Co.,* 7 Mo. App.
294; *De Kay v. Voorhis,* 36 N. J. Eq. 37; *Commonwealth
v. Smith,* 92 Mass. (10 Allen) 448 (87 Am. Dec. 672);
*Boyce v. Montauk Gas & Coal Co.,* 37 W. Va. 73 (16 S.
E. 501); Jones on the Law of Real Property in Convey-
ancing, § 153; Beach on Private Corporations, § 744.

We must hold therefore that the plaintiffs below
have no right to maintain this suit in equity.   In the
comparatively recent case of *Westerlund v. Black Bear
Mining Co.,* 203 Fed. 599, 121 C. C. A. 627, will be found
a most careful and exhaustive review of the authorities
upon this subject.   This case had under consideration the
Colorado statute.   Two distinct propositions are there
laid down, which seem irrefutable, either in reason or
upon authority, and which we quote.   The first of these
is:

"Another principle of law so firmly established as to be no longer debatable, is that an act or contract of a corporation, which is beyond the scope of its corporate powers, an act that it cannot lawfully do in any way or manner under any circumstances, is incapable of ratification by estoppel or otherwise, and the corporation itself may challenge it. But an act or contract of a corporation which is within its general corporate powers, which is neither wrong in itself nor against public policy, but which is defective from a failure to observe in its execution a requirement of law enacted for the benefit or protection of a third party or parties, is voidable only. Such an act or contract is valid, until avoided, not void until validated, and it is subject to ratification and estoppel.—*Central Transportation Co. v. Pullman's Car Co.*, 139 U. S. 24, 60, 11 Sup. Ct. 478, 35 L. Ed. 55; *Campbell v. Argenta Gold & Silver Min. Co.* (C. C.) 51 Fed. 1, 8; *Zabriskie v. Cleveland, C. & C. R. R. Co.*, 64 U. S. (23 How.) 381, 398, 16 L. Ed. 488; *St. Louis V. & T. H. R. R. Co. v. Terre Haute & I. R. R. Co.*, 145 U. S. 393, 402, 408, 12 Sup. Ct. 953, 36 L. Ed. 748; *Boston & M. Con. C. & S. Min. Co. v. Montana Ore Purchasing Co.* (C. C.) 89 Fed. 529, 530; *Miners' Ditch Co. v. Zellerback,* 37 Cal. 543, 578, 99 Am. Dec. 300; *Bishop & Co. v. Kent & Stanley Co.*, 20 R. I. 680, 684, 41 Atl. 255; *Beecher v. Rolling Mill Co.*, 45 Mich. 103, 105, 108, 109, 7 N. W. 695; *Eastman v. Parkinson,* 133 Wis. 375, 113 N. W. 649, 13 L. R. A. (N. S.) 921, 928, 929, 932; *State v. Richmond,* 26 N. H. 232; *Rochester Savings Bank v. Averell,* 96 N. Y. 467, 471, 475; *Paulding v. Steel Co.,* 94 N. Y. 334, 341; *Boyce v. Montauk Gas & Coal Co.,* 37 W. Va. 73, 85, 16 S. E. 501; *Watts' Appeal,* 78 Pa. 370, 394; *Manhattan Hardware Co. v. Phalen,* 128 Pa. 110, 118, 18 Atl. 428; *Thomas v. Citizens' Horse Ry. Co.,* 104 Ill. 462, 467."

The second proposition is as follows:

"But a corporation which has executed and accepted the benefits of a contract within the scope of its powers, that is neither wrong in itself nor against public policy, and that is defective only because in its execution the corporation has failed to comply with some legal requirement enacted for the sole benefit of third persons, is estopped to assail it, and the beneficiaries of the requirement alone may avoid it. Hence the stockholders of this corporation, and they alone, have the right to avoid this lease because they alone had any interest in a compliance with the legal requirement that they should assent to its execution.—*Hervey v. Midland Ry. Co.* (C. C.) 28 Fed. 169, 174; *In re New York Economical Printing Co.,* 110 Fed. 514, 519, 49 C. C. A. 133; *Rogers v. Nashville, C. & St. L. Ry. Co.,* 91 Fed. 299, 304, 307, 314, 315, 316, 33 C. C. A. 517; *Beecher v. Rolling Mill Co.,* 45 Mich. 103, 108, 109, 7 N. W. 695; *Boyce v. Montauk Gas Coal Co.,* 37 W. Va. 73, 85, 16 S. E. 501; *Eastman v. Parkinson,* 133 Wis. 375, 113 N. W. 649, 13 L. R. A. (N. S.) 921, 928, 929, 930; *Campbell v. Argenta Gold & Silver Min. Co.* (C. C.) 51 Fed. 1, 8; *Wood v. Waterwoods Co.* (C. C.) 44 Fed. 146, 150, 12 L. R. A. 168; *St. Louis, etc., R. R. Co. v. Terre Haute & I. R. Co.,* 145 U. S. 393, 402, 408, 12 Sup. Ct. 953, 36 L. Ed. 748; *Antietam Paper Co. v. Chronicle Publishing Co.,* 115 N. C. 143, 145, 20 S. E. 366; *Alabama Iron & Steel Co. v. McKeever,* 112 Ala. 134, 145, 20 South. 84; *Bishop & Co. v. Kent & Stanley Co.,* 20 R. I. 680, 684, 686, 41 Atl. 255; *McKee v. Title Ins. Co.,* 159 Cal. 206, 113 Pac. 140; *Nelson v. Hubbard,* 96 Ala. 238, 11 South. 428, 433, 17 L. R. A. 375; *Barrett v. Pollak Co.,* 108 Ala. 390, 18 South. 615, 620, 54 Am. St. Rep. 172; Jones on Real Property, § 153; 2 Beach on Private Corporations, p. 1165, § 744."

It is contended by defendants that in the *Carlsbad Water Company v. New,* 33 Colo. 389, 81 Pac. 341, this

court intended to and did adopt the doctrine of the early California cases. A consideration of that case discloses that the principal question was as to whether or not the Carlsbad Water Company, was a manufacturing corporation within the meaning of the statute. There are but two sentences contained in the opinion that may be said to have bearing upon the question here. These are:

"It was competent for appellant trustee to question the validity of the mortgage.—*In re Antigo Screen Door Co.,* 123 Fed. 249, 254, 59 C. C. A. 248; *McShane v. Carter,* 80 Cal. 310, 22 Pac. 178, 312; *Pekin Mining Co. v. Kennedy,* 81 Cal. 356, 22 Pac. 679. * * * For the reason above assigned—want of proper authority from the corporation for the execution of the mortgage—the same was void, and the following authorities sustain this conclusion.—*Duke v. Markham,* 105 N. C. 131, 10 S. E. 1017; *Mannhardt v. Ill. Staats Zeitung Co.,* 90 Ill. App. 315; *McShane v. Carter, supra; Vail v. Hamilton,* 85 N. Y. 453."

There was no attempt to support either of these statements by reason, and with the exception of the now overruled California cases, the authorities cited do not in any sense support the contention of the defendant in error here.

The now uniform holding of the courts of this country, that the provisions of the statute were for the benefit of stockholders only, and that they alone, may question the validity of a transfer or encumbrance made in violation of the statute, was not raised nor argued in that case. The court of appeals in *Firestone Co. v. McKissick,* 24 Colo. App. 294, 134 Pac. 147, in distinguishing that case, speaking through Presiding Judge Cunningham, said:

"But it does not appear from the opinion that the point raised by Judge Sanborn in the Westerlund case,

viz: that only the stockholders of the corporation, for whose benefit the section of the statute was passed, could invoke its provisions, was in any manner called to the attention of or considered by our supreme court in connection with the Carlsbad Water Company case. We have examined the briefs filed in the Carlsbad case, both the original briefs and those filed on rehearing, without being able to discover that this matter was even mooted in that case."

A further examination of the record and briefs in the Water Company case, fully justifies such statement. The sole question presented to the court was that of *ultra vires* because of the prohibition of the statute, and not as to whom may be entitled to raise that question. Clearly these statements of the law were made without sufficient consideration and without being properly before the court. While the bare statement by the court, that a trustee in bankruptcy may question the validity of the mortgage, was then sustained by the California case cited, that doctrine has since been repudiated by the supreme court of that state. In *McKee v. Title Ins. Co.,* 159 Cal. 206, 113 Pac. 140, the court said:

"He is not suing in behalf of the stockholders, or in their interest, and, there being no fraud, he stands in the shoes of the corporation with regard to the bonds. The corporation has received the money obtained by means of the bonds, and has applied it to the payment of its debts and the completion of the hotel. The money has thus inured to the benefit of the corporation and its stockholders, and of the general creditors also, since it has unquestionably given a substantial value to a structure which would otherwise be comparatively worthless. The corporation is therefore estopped to dispute the validity of the bonds and the creditors are likewise bound thereby. The real point of the objection is that the man-

ner of issuing the bonds was so defective that the transaction was *ultra vires,* and void notwithstanding that the corporation received and holds the benefits thereof. In regard to a similar claim the New York court of appeals said: 'That kind of plunder which holds on to the property, but pleads *ultra vires* against the obligation to pay for it, has no recognition or support in the laws of this state.' (*Seymour v. Association,* 144 N. Y. 333, 39 N. E. 365, 26 L. R. A. 859). The following cases declare that neither the corporation nor its creditors can, under like circumstances to those here existing and under similar provisions of the law, maintain such an attack on bonds irregularly issued, and that the provisions of such laws are for the protection of stockholders only.—*Anderson v. Bullock County Bank,* 122 Ala. 275, 25 South. 523; *Bishop v. Kent,* 20 R. I. 685, 41 Atl. 257; *Rochester Bank v. Averell,* 96 N. Y. 475; *Paulding v. Chrome Steel Co.,* 94 N. Y. 334; *In re New York Economical Pr. Co.,* 110 Fed. 519, 44 C. C. A. 133; *Hervey v. Ill. Midland Ry. Co.* (C. C.) 28 Fed. 174; *Manhattan Hdw. Co. v. Phelan,* 128 Pa. 110, 18 Atl. 428; *Wood v. Corry,* 44 Fed. 150, 12 L. R. A. 168; *Nelson v. Hubbard,* 96 Ala. 252, 11 South. 428, 17 L. R. A. 375; *Eastman v. Parkinson,* 133 Wis. 375, 113 N. W. 649, 13 L. R. A. (N. S.) 921. In *Boyd v. Heron,* 125 Cal. 453, 58 Pac. 64, it was a stockholder who made the objection and it was in defense to a suit to enforce his individual liability as such stockholder. It comes clearly within the rule that the provision is for the benefit of stockholders and it does not conflict with the cases just cited.''

The action in the Carlsbad case was to foreclose a mortgage executed by New, as vice-president of the company to Young as an individual, but who was at the time its president, and who transferred the mortgage to Maud New, wife of the vice-president, who instituted the suit.

Both New and Young as the chief executive officers of the company and constituting a majority of its board of directors, must have been conclusively presumed to know of the absence of authority by the stockholders. Equity does not look with favor upon such a transaction.

One of the strongest claims for the interposition of equity in the case at bar, and others cited to sustain it, is that the mortgagee was an innocent party, acting in good faith and without knowledge of the failure of the corporation to comply with the term of the charter or statute. But a careful examination of the additional authorities cited by the court in the Carlsbad case, makes it plain that these do not support the conclusion contended for by defendants.

*In re Antigo Screen Door Co.*, supra, the question whether or not a corporation, its creditors or assigns, had the right to question the validity of an incumbrance for its lack of the requisite assent of the stockholders, was neither presented nor considered. The question there was whether or not a trustee in bankruptcy could assail a chattel mortgage which was fraudulent as to creditors, and the court held that he could.

In *Duke v. Jarkham, supra,* and in *Mannhardt v. Ill. Staats Zeitung, supra,* the question here was neither raised, considered nor decided. In the Westerlund case the court considers the Carlsbad case as contrary to the conclusion there stated, but says of it:

"The result is that, laying aside the overruled California cases, but one opinion in *Carlsbad Water Co. v. New,* 33 Colo. 389, 81 Pac. 34, in which the question here at issue was presented, considered, and decided, has come to our attention in which it has been held that a corporation has the right to challenge its otherwise valid contract, on the ground that it was made without the required assent of its stockholders. That decision is for-

tified by no argument or reason and by no authorities that have not been overruled."

It is inconceivable that the court in 33 Colo. intended to squarely overrule the doctrine of 9 Colo. without so much as offering a reason for so doing. The latter case is not cited in the briefs filed, and presumably not otherwise called to the attention of the court. It is even more to be doubted that with the question fairly presented, the court would have ignored entirely the vast array of decisions of our courts, both State and Federal, including the Supreme Court of the United States holding to the contrary.

By reason of the state of facts presented in the Carlsbad case, upon which the decision was rendered, and because of the overwhelming weight of authority against the conclusion there stated upon the question here considered, we cannot consider that case as controlling.

It is an unquestioned rule that a court of equity in the absence of fraud, will not set aside a contract that has been fully executed and closed on both sides, where each party has received and holds the proceeds and consideration for the contract, without first ordering a return to each party of the consideration, paid by it, and thereby placing the respective parties as near as may be *in statu quo*. The record shows that the plaintiff in error here has tendered an adjustment in accord with this principle.

Under this rule, the Dillon estate, being in possession of the real estate under the trust deed, and the Public Trustees' deed based thereon, must be held to have a prior equitable lien on the premises for the amount of the loan, even though the mortgage be regarded as void.— *Madison Ave. Bap. Ch. v. Olive St. Bap. Ch.*, 73 N. Y. 82.

To permit the judgment creditors to recover under such circumstances would in the language of the New York court, *Seymour v. Spring Forrest Assn.*, 144 N. Y.

333, 39 N. E. 365, 26 L. R. A. 614, be to sanction a species of plunder which has no recognition or support in law or equity.

The judgment is reversed with instructions to enter judgment for the defendant below.

*En banc.*

WHITE, J., not participating.

Decided January 4, A. D. 1915.  Rehearing denied February 1, A. D. 1915.