In re HARBOR POINTE OFFICE PARK, LTD., I, Debtor.

HARBOR POINTE OFFICE PARK, LTD., I, Plaintiff,

v.

PRUDENTIAL NATIONAL ASSURANCE CO., et al., Defendants.

Bankruptcy No. 86 B 4004 M.
Adv. No. 86 M 1090.

United States Bankruptcy Court, D. Colorado.

Feb. 4, 1988.

Colo., for plaintiff, Harbor Pointe Office Park, Ltd., I.

Diane B. Davies, Loser, Davies, Magoon & Fitzgerald, P.C., and Michael Katch, Katch, Anderson & Wasserman, Denver, Colo., for defendant, Provident Nat. Assur. Co.

Jay John Schnell, John E. Maas, James H. Hahn, Roath & Brega, P.C., Denver, Colo., for defendant, First Colorado Bank & Trust, N.A.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

CHARLES E. MATHESON, Chief Judge.

This matter comes before the Court on alternative motions for summary judgment filed by Harbor Pointe Office Park, Ltd., I ("Harbor Pointe" or "Plaintiff"), Provident National Assurance Company ("Provident") and First Colorado Bank and Trust, N.A. ("First Colorado"). These motions for summary judgment seek a determination of the nature and extent of liens being asserted against the property of the Plaintiff by Provident and First Colorado. At the heart of these motions is the validity of notes, deeds of trust and security agreements executed on behalf of the Plaintiff limited partnership by its general partner, Austin B. Speed, Jr. ("Speed"), at a time when Speed had already filed a voluntary petition in bankruptcy. Consequently, at issue herein is the ability of the trustee or debtor-in-possession to avoid or otherwise defeat the liens being asserted by Provident and First Colorado, pursuant to 11 U.S.C. § 544.

### FACTS

Provident advanced monies to Harbor Pointe and received a promissory note in the amount of $1,070,000.00 as well as a deed of trust and an assignment of rents encumbering Harbor Pointe–Phase II. Harbor Pointe concedes that the above-cited deed of trust was duly recorded with the Arapahoe County Clerk and Recorder's Office on August 3, 1984, and that an assignment of rents was duly recorded with the

Garry R. Appel, Keith Block, Rothgerber, Appel, Powers & Johnson, Denver,

same clerk and recorder's office on August 3, 1984. Harbor Pointe also concedes that the funds advanced by Provident were all expended for the use and benefit of Harbor Pointe.

First Colorado similarly advanced monies to Harbor Pointe and received in return a promissory note in the amount of $830,-000.00 as well as a deed of trust and an assignment of rents encumbering Harbor Pointe–Phase III. Harbor Pointe concedes that the above-cited deed of trust was duly recorded with the Arapahoe County Clerk and Recorder's Office on November 3, 1984, and that the assignment of rents was likewise duly recorded at that same office on the same date. Harbor Pointe further concedes that the funds advanced by First Colorado were all expended for the use and benefit of Harbor Pointe.

Harbor Pointe seeks to invalidate the recorded encumbrances held by Provident and First Colorado by resorting to the "strong arm" lien avoidance provisions of Section 544. The essence of Harbor Pointe's position is that the lien documents were signed by Speed after he had personally filed bankruptcy, a Chapter 11 individual voluntary petition filed in the Eastern District of New York on July 16, 1984, which was not disclosed to the Harbor Pointe partners until after the consummation of the Provident and First Colorado transactions. Speed's bankruptcy filing, Harbor Pointe contends, renders the lien documents invalid and the filing of such documents ineffectual to create any liens against the Harbor Pointe properties.

Harbor Pointe's argument is in large part based upon the provisions of the Colorado Partnership Law, C.R.S. §§ 7–60–101 *et seq.*, and the Colorado Uniform Limited Partnership Act of 1981, C.R.S. §§ 7–62–101, *et seq,* which pertain to the dissolution of a partnership and the resulting inability of a partner to bind the partnership to third parties. Section 7–60–131 of the Colorado Partnership Law provides that dissolution is caused by the bankruptcy of any partner or the partnership. Section 7–60–133 provides that dissolution terminates the authority of any partner to act on behalf of

the partnership when the dissolution is caused by the bankruptcy of a partner. Further, Section 7–60–135 states that after dissolution, a partnership is not bound to third persons by an act of a partner where that partner has become bankrupt.

Pursuant to Section 7–62–402 of the Colorado Uniform Limited Partnership Act, a general partner of a limited partnership ceases to be a partner upon his filing of a voluntary petition in bankruptcy. Section 7–62–202 provides that upon the withdrawal of a general partner an amendment to the certificate of limited partnership shall be filed within thirty (30) days of such withdrawal.

It is undisputed that at the time Harbor Pointe filed its bankruptcy petition on May 8, 1986, the subject lien documents executed by Speed on behalf of Harbor Pointe had been duly recorded by both Provident and First Colorado. It is further undisputed that those lien documents were executed by Speed after he had voluntarily filed his Chapter 11 petition in the Eastern District of New York. The question is whether the execution of the lien documents by Speed after filing his own bankruptcy petition in any way binds Harbor Pointe to Provident and First Colorado in light of the above-cited Colorado partnership statutory provisions concerning termination of a partner and dissolution of a partnership.

Both Provident and First Colorado maintain that the subject liens are valid and enforceable under alternative theories of apparent or actual authority, ratification, equitable lien, equitable subrogation and estoppel. Harbor Pointe maintains that Colorado partnership law and its partnership agreement renders the lien documents executed by Speed void and unenforceable. The Court will address the validity of said liens and whether the "strong arm" provisions of 11 U.S.C. § 544 allow Harbor Pointe to avoid the purported liens asserted by Provident and First Colorado. The Court finds that there are no genuine issues of material fact that would preclude entry of an order herein pursuant to Bankruptcy Rule 7056 and F.R.Civ.P. Rule 56. *See, Celotex Corp. v. Catrett,* 477 U.S. 317,

106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Pursuant to 28 U.S.C. § 157(b)(2)(K), this Court finds that the issues herein constitute "core" matters and shall therefore enter a final order accordingly.

## MEMORANDUM

### WHETHER THE LIENS ARE SUBJECT TO THE AVOIDANCE POWERS UNDER SECTION 544(a)

■ Harbor Pointe, as a debtor-in-possession ("DIP"), is entitled to exercise all of the rights and powers of a trustee pursuant to 11 U.S.C. § 1107(a). Among these rights and powers are the "strong-arm" lien avoidance powers pursuant to Section 544(a) of the Bankruptcy Code. However, the determination of whether any particular creditor possesses a perfected security interest having priority over the trustee/DIP exercising the 544(a) powers is controlled by the applicable state law. *Pearson v. Salina Coffee House, Inc.*, 831 F.2d 1531 (10th Cir.1987); *See also In re Chaseley's Foods, Inc.*, 726 F.2d 303, 307 (7th Cir.1983); *In re Rolain*, 823 F.2d 198 (8th Cir.1987).

■ As a DIP, Harbor Pointe succeeds only to the interests and rights of the debtor at the time of the filing of the petition. *Storage Technology Corp. v. Storage Technology Finance Corp. (In re Storage Technology Corp.)* 55 B.R. 479, 484 (Bankr. D.Colo.1985); *see also Georgia Pacific Corp. v. Sigma Service Corp.*, 712 F.2d 962 (5th Cir.1983); 4 *Collier on Bankruptcy*, para. 541.13 at 541–66 (15th ed. 1983). Based solely upon the Colorado partnership statutes cited above, it would appear that as a DIP Harbor Pointe could avoid the liens being asserted herein under its "strong arm" powers pursuant to Section 544(a). However, the Section 544 avoidance powers are subject to all state law defenses not otherwise precluded by the Bankruptcy Code.

As a hypothetical lien creditor or bona fide purchaser on the filing date of Harbor Pointe's petition, the question is whether a DIP is bound by the lien documents executed by Speed without apparent authority, though duly recorded. The recordation raises the related question whether the DIP is subject to constructive notice of the encumbrances at issue notwithstanding Section 544.

### A. ESTOPPEL

■ The binding effect upon a principal of unauthorized acts of an agent has previously been addressed by Colorado state courts. The Colorado Supreme Court, *en banc*, in *Dillon v. Myers*, 58 Colo. 492, 146 P. 268 (1915), held that a mortgage given encumbering a manufacturing plant which was given by the officers of the corporation was nonetheless valid and binding despite the fact that the granting of the deed of trust was *ultra vires* and therefore unauthorized. In *Dillon*, the court found that the granting of the mortgage in the first instance was *ultra vires* pursuant to the governing Colorado statute. *Dillon*, 146 P. at 269, 272–74. The court went on to hold that the unauthorized act was voidable and subject to estoppel. As the *Dillon* court stated:

> Corporations have the capacity to do wrong, and may overstep the limits placed by the law to their powers, and when they violate their charters in this respect, their acts are illegal, but not necessarily void. [citation omitted] The plea of ultra vires is not to be understood as an absolute and preemptory defense in all cases of excess of power, without regard to other circumstances and considerations. The plea is not to be entertained where its allowance will do great wrong to innocent persons. [citation omitted] ... But where the act is not wrong per se, where the contract is for a lawful purpose in itself, has been fairly executed by the party who seeks to enforce it, we must assent to the doctrine of those authorities which hold that the excess of the corporate powers of the contracting party which has received the benefit of the contract, is an unconscionable defense, which may not be set up to exempt from liability the party so pleading it. And such, we think, is the case before us. *Dillon*, 146 P. at 271, *citing,*

*Denver Fire Ins. Co. v. McClelland,* 9 Colo. 11, 9 P. 771 (1885).

Similarly in the case at bar, Harbor Pointe seeks to avoid the liens at issue by virtue of Colorado partnership statutes and its partnership agreement which state that the bankruptcy filing of the sole general partner terminates his authority to bind the partnership. Harbor Pointe's defense to the liens fails in the same fashion as did the corporation's defense to the mortgage at issue in *Dillon, supra.* Speed's authority to enter into contracts and deeds of trust binding the partnership technically terminated upon his filing bankruptcy. However, Harbor Pointe is estopped from denying the validity of the subject liens since it received the full benefits and use of the loan proceeds from Provident and First Colorado for the purposes intended. It is undisputed that Harbor Pointe enjoyed the full use of the loan proceeds and applied those proceeds towards the completion of Phases II and III, as intended under the loan agreements.

Despite the technical dissolution of the limited partnership, Harbor Pointe continued *de facto* to operate and complete the above cited projects. It matters little whether it is denominated "winding up" or continuing the limited partnership for the purpose of determining the binding effect of these liens via an estoppel analysis. Harbor Pointe, as an entity, received the full benefits of the loan proceeds as originally intended.

As the *Dillon* court stated in upholding *ultra vires* or otherwise unauthorized acts of a contracting party:

> It is the unquestioned rule that a court of equity, in the absence of fraud [by the party seeking to enforce the illegal act], will not set aside a contract that has been fully executed and closed on both sides, where each party has received and holds the proceeds and consideration for the contract, without first ordering a return to each party of the consideration, paid by it, and thereby placing the respective parties as near as may be in status quo. *Dillon,* 146 P. at 274.

This Court adopts the rationale and rule enunciated by the Colorado Supreme Court in *Dillon, supra.* Harbor Pointe is therefore estopped from denying the validity and efficacy of the lien documents executed by Speed despite the above-cited Colorado partnership statutes and Harbor Pointe's partnership agreement. As in *Dillon,* this Court could be persuaded to set aside the loan obligations only where Harbor Pointe offered to tender to the respective lender the outstanding principal balance of the note together with interest to the date of tender. However, the liens at issue are valid as between the parties from the date of execution as a result of the estoppel rule cited above.

The present case is distinguishable from an earlier decision within this district concerning the effects flowing from the dissolution of a partnership as a result of a general partner filing bankruptcy. The court in *In re Harms,* 10 B.R. 817 (Bankr. D.Colo.1981) addressed the question of whether a partnership agreement could be assumed by a DIP as an executory agreement pursuant to 11 U.S.C. § 365. The *Harms* court found that the limited partnership agreement was an executory contract under Section 365. The *Harms* court went on to find, however, that executory partnership agreements cannot be assumed by a DIP as a general partner without the consent of the limited partners. That result was due to the personal relationship within a partnership rendering the partnership agreement unassumable pursuant to Section 365(c) and pertinent state law. *See, Harms,* 10 B.R. at 822. It should be emphasized that the *Harms* decision focused on a prospective assumption of the partnership relationship by a debtor general partner under Section 365.

In this case, the prospective assumption of a partnership agreement is not at issue. The validity of lien documents executed by a general partner already in bankruptcy where the benefits and use of the loan proceeds have been received and fully utilized by the partnership is the focus herein. The present case is distinguishable from *Harms* due to the estoppel effect of Harbor Pointe having received the full use and

benefits of those loan proceeds. Consequently, any dissolution which arguably occurred upon Speed's filing bankruptcy has no effect on the ability of the lenders herein to estop Harbor Pointe from avoiding or otherwise denying the validity of the liens, as duly recorded. It is the recordation of these liens which precludes Harbor Pointe as a DIP from avoiding the liens pursuant to its Section 544 powers.

## B. CONSTRUCTIVE NOTICE

The estoppel effect noted above would be ineffective to defeat the Section 544 "strong arm" powers of the DIP were it not for the fact that the liens at issue were duly recorded almost two years prior to the filing of Harbor Pointe's petition. The hypothetical lien creditor or bona fide purchaser status afforded the DIP under Section 544 is not enough to overcome the superior priority of both First Colorado and Provident as a result of their lien recordation. Such a result is in keeping with the intent and purposes of the Colorado recording statute.

The Colorado Supreme Court, *en banc*, stated in *Grynberg v. City of Northglenn*, 739 P.2d 230 (Colo.1987), in pertinent part:

> We have described the general purposes of recording acts to include the "protection for purchasers of real property against the risk of prior secret conveyances by the seller[,]" and have said that one purpose is to "permit a purchaser to rely on the condition of title as it appears of record." (citations omitted) ... Therefore, one entitled to protection under the recording act acquires rights that "are not measured by the actual interest of the seller in the land, but rather by his apparent interest[,]" as reflected by the real estate records. (citation omitted). *Grynberg*, 739 P.2d at 238.

The *Grynberg* court thus summarized the rights to which a bona fide purchaser is subject. The recordation of the liens at issue prior to the date of the petition has the effect of deeming the DIP as having constructive notice of said liens and therefore unable to avoid the liens pursuant to Section 544. *See, Arnove v. First Federal*

*Savings & Loan Assoc.*, 713 P.2d 1329, 1330–31 (Colo.App.1985), *cert. denied* (Colo.1986).

More recently, the District Court for the District of Colorado addressed the interplay between constructive notice via recordation of an interest in real property and the Section 544(a) "strong arm" powers. The District Court held in *In re Bandell Investments, Ltd.*, 80 B.R. 210 (D.Colo.1987) that a trustee is imputed with constructive notice of encumbrances properly recorded prior to the time of the bankruptcy petition. As a result, the trustee in *Bandell* was precluded from exercising the strong arm powers pursuant to Section 544(a) as against the secured interest duly perfected prior to the filing of the petition. *Ibid.*

Similarly in this instance, it is undisputed that both Provident and First Colorado properly recorded their liens pursuant to C.R.S. § 38–35–109(1) prior to the filing of Harbor Pointe's petition. Harbor Pointe is therefore imputed, as DIP, with constructive notice of such liens and is precluded from avoiding them pursuant to Section 544(a). This is clearly not the situation of a "secret lien" being imposed via estoppel or ratification against which Section 544(a) is designed to protect. Proper recordation of the liens at issue together with the estoppel noted above result in the DIP being bound by the liens at issue herein.

In view of the foregoing, this court finds that Harbor Pointe is estopped from denying the validity and effectiveness of the lien documents executed by Speed on its behalf despite the prior filing of his voluntary bankruptcy petition; that Harbor Pointe, as DIP, is imputed with constructive notice of the recordation of the liens at issue; that Harbor Pointe, as DIP, is therefore precluded from avoiding the subject liens under its Section 544(a) "strong arm" powers; and that the determination of the current balances due under such lien interests were not at issue in the within motions before the Court and no such determination is therefore made. Accordingly,

IT IS THEREFORE ORDERED that the motions for summary judgment filed by

Provident and First Colorado are granted consistent with the foregoing findings and conclusions of law; and

IT IS FURTHER ORDERED that the motion for summary judgment filed by Harbor Pointe is denied.