HERVEY *v.* ILLINOIS MIDLAND RY. Co. and others.

SECOR *v.* SAME.

UNION TRUST Co. OF N. Y. *v.* PARIS & DECATUR R. Co. and others.

SAME *v.* PARIS & TERRE HAUTE R. Co. and others.

FREIDENBERG *v.* PARIS & DECATUR R. Co. and others.

KANSAS ROLLING-MILL Co. *v.* ILLINOIS MIDLAND RY. Co. and others.

*(Circuit Court, S. D. Illinois.* February 29,. 1884.)

1. RECEIVER—APPOINTMENT IN VACATION.

The appointment of a receiver, in Illinois, by a judge of the state circuit court, in vacation, is unauthorized by law; but such an appointment, if afterwards confirmed by the court in term, will be deemed to have been made by the court itself.

2. SAME—RAILROAD RECEIVERS.

Where a railroad company had purchased the properties and franchises of other railroad companies, and a bill has been filed against such company by a part of its judgment creditors and the holders of a majority of its stock, alleging the existence of judgments to a large amount against the purchasing and the selling companies, and that the officers cannot distinguish the property of the several companies on which to levy for their respective debts, and that their property is therefore being sacrificed, the court has jurisdiction, as between the parties before the court, to take possession of the property by a receiver, apart from the question how far its action during the receivership would affect the rights of parties not before the court.

3. PURCHASE OF RAILROAD—ACQUIESCENCE THEREIN—ESTOPPEL.

The charter of the Peoria, Atlanta & Decatur Railroad Company authorizes that company to purchase railroads which may form a continuation of its main line; and where such purchase has been fully executed, and where its validity has never been questioned by a direct proceeding, the parties to such purchase, those who acquiesced in it, and those who failed in due time, by some proper proceeding, to question its validity, are estopped to raise any such question.

4. GENERAL RAILROAD INCORPORATION ACT OF ILLINOIS—STOCKHOLDERS.

The provision of the general act of Illinois, relating to the incorporation of railroad companies, providing that the assent of two-thirds in amount of the stock of the corporation shall be essential to the validity of any mortgage by that corporation, is applicable only to corporations formed under that act, and that provision is for the benefit of stockholders, and not creditors.

5. ACTS OF RAILROAD COMPANIES PERFORMED OUT OF THE STATE.

The constitution and laws of Illinois do not invalidate deeds and bonds of railroad companies, organized under its laws, merely because executed out of the state.

6. MORTGAGES OF RAILROADS TO FOREIGN TRUST COMPANIES AS TRUSTEES.

A mortgage upon railroad property in Illinois, executed to a foreign trust company, to secure bonds made payable out of the state, is not prohibited by. the laws or public policy of that state.

7. RECEIVERS CERTIFICATES—EQUITIES OF PRIOR MORTGAGEES.

Where the court authorizes the receiver, for the protection of the trust property, to borrow money, and give certificates therefor, which are made a charge upon the property, the holder of such certificates must be deemed to have taken them subject to the rights of parties who have prior liens upon the property, and who have not, but should have been, brought before the

court; and where such prior lienholders are brought before the court, they are entitled to contest the necessity, validity, effect, and amount of such certificates, the same as if such questions were then first presented; and the court shall then declare such certificates to be superior or subordinate to such prior liens, as equity may require.

**8. JUDGMENT CREDITORS—EQUITABLE LIENS.**

Where a railroad company purchases the properties and franchises of other railroad companies, and assumes payment of the indebtedness of the selling companies, the judgment creditors of the selling companies do not thereby acquire an equitable lien upon the properties so sold, for the payment of their claims; they merely acquire the right to look for payment to the purchasing company.

**9. EQUITABLE LIENS.**

Where bonds are purchased with knowledge of an equitable lien thereon, they remain subject to such lien in the hands of the purchaser.

The Peoria, Atlanta & Decatur Railroad Company was incorporated, under a special act, in 1869. In 1872 it issued bonds to the amount of $1,300,000, and secured the same by a trust deed on its franchises and property, including its railroad from Peoria, Illinois, to Decatur, Illinois, to James H. Secor, trustee. The Paris & Decatur Railroad Company was incorporated, under a special act, in 1861. In 1872 it issued bonds to the amount of $1,200,000, and secured the same by a trust deed on its franchises and property, including its railroad from Paris, Illinois, to Decatur, Illinois, to the Union Trust Company of New York, trustee. The Peoria & Terre Haute Railroad Company was incorporated, under the general law of Illinois, in 1873. In 1874 it issued bonds to the amount of $280,000, and secured the same by a trust deed on its franchises and property, including its railroad from Terre Haute, Indiana, to Paris, Illinois, to the Union Trust Company of New York, trustee.

The act incorporating the Peoria, Atlanta & Decatur Railroad Company empowered that company to unite its railroad with any other continuous lines of railroad, and to purchase any other roads, or parts of roads, which may be adopted as a part of its main line, and by such purchase to acquire all the rights and franchises pertaining to the purchased road. In September, 1874, the Peoria, Atlanta & Decatur Railroad Company purchased of the Paris & Decatur Railroad Company, and of the Paris & Terre Haute Railroad Company, the franchises, and all the railroads and other property, of the latter companies, and received deeds of conveyance therefor from said two companies, and therein assumed payment of all the indebtedness of said two companies; and the three railroads have ever since been continuously operated as one line. In November, 1874, the Peoria, Atlanta & Decatur Railroad Company changed its name to that of the Illinois Midland Railway Company, under the laws of Illinois, and in January, 1875, that company issued bonds to the amount of $4,175,000, and secured the same by a mortgage on the entire line to Union Trust Company of New York, trustee.

On September 11, 1875, a bill was presented to the judge of the circuit court of Edgar county, Illinois, at chambers, on behalf of R.

G. Hervey, the holder of a majority of the stock of the Illinois Midland Railway Company, and of each of its said constituent railroad companies, and on behalf of certain judgment creditors of the Paris & Decatur Railroad Company, alleging that there are judgments against said railway company to the amount of $200,000, and executions in the hands of officers of Edgar county to the amount of $100,-000, against said several corporations; that the officers cannot distinguish the property of the said several corporations on which to levy for their respective debts, and that their property is therefore being sacrificed, rolling stock having been sold for one-fifth of its value, and $20,000 worth now being advertised for sale; that negotiations for loans to pay off all debts are pending; that to effect such loans it is necessary that the respective debts and assets of the several corporations be ascertained; and that the assets of the corporations, if not sacrificed by execution sales, will be sufficient to pay all debts. The bill makes the Illinois Midland Railway Company party defendant, and prays, *inter alia*, for the appointment of a receiver. The appearance of the railway company was entered by its solicitor, and a receiver was thereupon appointed by the judge at chambers; but, within a day or two thereafter, the appointment of the receiver and the action of the judge were confirmed by the Edgar circuit court, by an order of record made in open court. The cause was subsequently transferred to the circuit court of the United States for the Southern district of Illinois, and was afterwards consolidated with the several causes which had in the mean time been instituted in that court for the foreclosure of the said several trust deeds. The causes were referred to a special commissioner to take the testimony, and report his conclusions of law and fact.

*Crea & Ewing,* for Waring Bros.

*Isham, Lincoln, Burry & Ryerson,* for Paris & Decatur bondholders.

*W. H. Peckham,* for Union Trust Co. of N. Y.

*J. M. Clokey,* for judgment creditors.

*H. S. Greene,* for Kansas Rolling-mill Co.

*John T. Dye,* for S. A. Fletcher & Co.

HARLAN, Justice. The above causes have been submitted upon exceptions to the report of Special Commissioner Branson, and generally for such orders as, in the present state of the litigation, may be necessary or proper. A full discussion of all the questions covered by the arguments of counsel would require a more extended opinion than, consistently with other public duties, can be now prepared. I shall attempt nothing more than to indicate the general conclusions which have been reached.

1. The order made by the judge of the Edgar circuit court, on the eleventh day of September, 1875, at chambers, (and, as I infer, in the *vacation* of his court,) appointing a receiver of the Illinois Midland

Railway Company, was unauthorized by law. *Hammock* v. *Loan & Trust Co.*, 105 U. S. 77.

2. But the appointment of such receiver must be deemed to have been made by the court itself from and after the entry of the order, at its September term, 1875, confirming what the circuit judge had previously done at chambers.

3. Even if the averments of the original bill filed by Hervey and others were not such as to have made it proper to appoint a receiver, I cannot say that the order appointing one was a nullity. Whether the protection and preservation of the property required such appointment, was, it must be conceded, a question addressed to the sound legal discretion of the court. As between the parties before the court, it certainly had jurisdiction to take possession of the property by a receiver. How far its action, during the existence of the receivership, would conclude or affect the rights of others interested in the management or disposition of the property, but who were not before the court in person or by representation, is a question quite apart from the general proposition, advanced by counsel, that the Edgar circuit court was wholly without jurisdiction, at the suit of stockholders and judgment creditors,—the railroad company appearing, and making no opposition,—to appoint a receiver, and through him control and manage the property.

4. Whether the purchase by the Peoria, Atlanta & Decatur Railroad Company of the Paris & Decatur Railroad, and of the Paris & Terre Haute Railroad, was authorized by the laws of Illinois, is by no means free from difficulty. I incline to think that warrant for such purchase is found in the charter of the Peoria, Atlanta & Decatur Railroad Company. It was given power to *unite* its railroad with any other *continuous* lines of railroad then constructed, or which might thereafter be constructed, in Illinois *upon such terms* as might be *mutually agreed upon between the companies so uniting;* also power to *purchase, upon such terms as might be agreed upon,* any other roads, or parts of roads, either wholly or partly constructed, which might *constitute* or be *adopted* as part of its main line, and by such purchase acquire and become vested with all the rights and franchises pertaining to the road, or part of road, so purchased. It is quite true that the Peoria, Atlanta & Decatur Railroad Company was not authorized to purchase *any* railroad in the state; but I incline to think that its charter authorized the purchase of any road which, from its location, would be fairly deemed a continuation of the main line of the purchasing company. The effect of the arrangement between the three companies was to establish a continuous line from Peoria, via Decatur, to Terre Haute. That small parts of that line were and are owned by other companies, does not affect the substance of the transaction whereby, with the knowledge and approval of the great body of the bondholders and stockholders of the three roads, they were operated as one line, under a common management.

There is nothing in the charter either of the Paris & Decatur Railroad Company, or of the Paris & Terre Haute Railroad Company, which expressly forbids the arrangement made by them, respectively, with the Peoria, Atlanta & Decatur Railroad Company. And as it has been fully executed, and since its validity has never been questioned in a direct proceeding upon the part of the state, nor by those who are interested in these corporations, I am not disposed to make the rights of parties in this litigation depend upon the inquiry whether the contract by which these properties have been consolidated and operated in the name of the Illinois Midland Railroad Company was technically valid or not. In *Thomas* v. *Railroad Co.*, 101 U. S. 71, the court said that "there can be no question that in many instances where an invalid contract which the parties to it might have performed on both sides, whereby money has been paid or property changed hands, the courts have refused to sustain an action for the recovery of the property or the money so transferred;" further, "that the executed dealings of a corporation must be allowed to stand for or against both parties, when the plainest rules of good faith require it;" still further, that "contracts which, though invalid for want of corporate power, have been fully executed, shall remain as the foundation of rights acquired by the transaction." I am the more readily inclined to act upon the view indicated because, as said by Judge DRUMMOND in *Dimpfel* v. *Ohio & M. Ry. Co.*, 9 Biss. 129, "both by the legislation of the state, and by the construction of the same by its highest court, great encouragement has been given to the union of lines of railroad, for the purpose of having them operated under some general management; the result of which has been the consolidation of many lines of road which were originally separate and distinct, but which are now operated under one system."

Those who were parties to the arrangement in question, those who acquiesced in it, and those who failed in due time, by some proper proceeding, to question its validity, should be held to be estopped to raise any such point in these causes. The litigation must therefore be conducted to a conclusion upon the basis that the sale and transfer by the Paris & Decatur Railroad Company and the Paris & Terre Haute Company to the Peoria, Atlanta & Decatur Railroad Company is not to be here questioned.

5. Creditors of the before-mentioned railroad companies, who are parties herein, claim that in the execution of the mortgages in question certain requirements of the statutes of Illinois were not observed, and consequently that each of those instruments are void. Those mortgages were executed by the companies at the following dates: By the Peoria, Atlanta & Decatur Railroad Company, April 25, 1872; by the Paris & Decatur Railroad Company, July 1, 1872; by the Paris & Terre Haute Railroad Company, April 1, 1874; and by the Illinois Midland Company, January 1, 1875. It is contended that, by the statutes of Illinois in force prior to and at the time of the execution

of those mortgages, the assent of two-thirds in amount of the stock of the corporation, expressed in a prescribed mode, was essential to the validity of any railroad mortgage. In support of this position reference is made by counsel to the tenth subdivision of section 19 of the act of March 1, 1872. Rev. St. Ill. (Hurd's Ed. 1880,) p. 817. But that provision, by its terms, is applicable to corporations formed under that act. The Peoria, Atlanta & Decatur Railroad Company and the Paris & Decatur Railroad Company were incorporated before the passage of that act,—one in 1869, and the other in 1861. It is insisted, however, that the forty-fifth section of the general act of 1849 was not repealed by the act of 1872. That statement is true, but the fact is of no consequence here. By the forty-fifth section of the act of 1849 it is declared that "all existing corporations within this state shall respectively have and possess all the powers and privileges, and be subject to all the duties, liabilities, and provisions, contained in this [1849] act." The purpose, partly, of that section, was to give corporations *then existing* the benefits of the general law of 1849. The saving, however, from repeal, by the act of 1872, of certain sections (including the forty-fifth) of the act of 1849, did not have the effect of giving to corporations formed before the act of 1872 the privileges, or of subjecting them to the liabilities and restrictions, specified in the nineteenth section of the latter act; for that section is, in terms, made to apply to corporations formed under the act of 1872.

The objection under consideration can have no application to any one of the sectional mortgages, except that executed by the Paris & Terre Haute Railroad Company, which was organized after the passage of the act of 1872. But it cannot avail the parties making it for several reasons, one of which is that, as the Paris & Terre Haute Railroad Company admits the execution and delivery of the mortgage, it must, *as between the company and its creditors*, be deemed a valid instrument. The provision in the act of 1872, making the assent of a given number of stockholders essential to the validity of a mortgage, is primarily, if not exclusively, for the benefit of stockholders. If it be conceded that stockholders of a railroad corporation, formed under the act of 1872, could, as against *bona fide* holders of bonds secured by a mortgage executed by such corporation, defeat a mortgage not executed with the expressed assent of the requisite number of stockholders, it does not follow that the creditors of the corporation could raise any such question. Under the circumstances disclosed by the record, the stockholders of the Paris & Terre Haute Railroad Company are estopped to say that the mortgage is not a valid security, according to its terms, for the payment of the bonds intended to be secured by it. Much less can creditors urge such an objection, particularly when the state has not, by any direct proceeding, questioned the validity of the mortgage under the act of 1872.

6. It is contended that the deed and bonds executed by the Paris

& Decatur Railroad Company were executed in the state of New York, and for that reason are void. The constitutional requirement that every railroad corporation organized or doing business in this state, under its laws, shall have and maintain a public office or a place of business in this state, for the transaction of its business, does not prevent the corporation from having also an office beyond the limits of the state, nor invalidate the acts of such corporations when performed out of the state; nor do the provisions of the act of March 1, 1872, work any such result. But the court is referred to the general incorporation act, approved April 18, 1872, in force July 1, 1872, in which it is provided that "the action of any meeting held beyond the limits of this state shall be void unless such meeting was authorized, or its acts ratified, by a vote of two-thirds of the directors, trustees, or officers corresponding to trustees, at a regular meeting." If that provision has any application to corporations operating railroads, other than *horse or dummy railroads,* it is sufficient to say that it does not appear that the meeting in New York was unauthorized by the requisite number of directors. On the contrary, it is not to be doubted from the evidence that it was so authorized, or was subsequently recognized and approved.

7. It is said that the deed executed by the Paris & Decatur Railroad Company was never delivered or recorded or filed for record. There is before me what purports to be a printed copy of that mortgage, to which is appended certificates showing that it was duly acknowledged and filed for record. I do not, however, find, from the record, that a certified copy of that mortgage has been regularly filed in these suits. This I take to be the result of mere inadvertence, and that, and like omissions to file copies of existing documents, may be supplied before any order is entered herein as the result of the present hearing.

8. It is insisted that the Union Trust Company could not, consistently with the statutes and public policy of Illinois, take title as trustee in a mortgage by a railroad corporation upon its property in this state. In this view I am not able to concur. Former examinations of adjudged cases have made me quite familiar with the state of the law upon this general question. Without attempting an extended review of the decisions, I content myself with saying that, until compelled to do so by some more direct and authoritative decision of the question, I am unwilling, in view of the consequences— reaching beyond any interests involved in this litigation—which would result from sustaining the proposition above stated, to adjudge that a mortgage executed to a foreign trust company upon railroad property in Illinois, to secure bonds made payable out of the state, is prohibited or made invalid by the laws or public policy of this state, or that the lien thereby given to secure the bonds is not enforceable as against the mortgagor company, or its stockholders, or its creditors.

9. On the fourth of September, 1877, the Union Trust Company of New York, on its petition and motion, was made a party defendant in the original suit of *Hervey* v. *Illinois Midland Ry. Co.*, "with all the rights and privileges, as though it had been an original defendant in said cause." From that time forward it was before the court, with opportunity, as trustee, to resist all applications for issuing receiver's certificates which affected, or which might affect, the interests it represented. Being before the court, it had the right, and was under a duty, to protect those interests as far as it could.

But it is contended that, until the bondholders or their trustee were made parties, the court was without *jurisdiction*, by means of receiver's certificates or in any other mode, to displace their lien upon the trust property; and consequently that all receiver's certificates issued before the trustee was made a party were void as against it and the bondholders. In my judgment, there was *jurisdiction* to appoint a receiver at the suit of stockholders and creditors of the railroad company. Whether the protection and preservation of the property in fact required the appointment of a receiver, and what action was necessary to be taken in order to protect and preserve it, were matters necessarily addressed to the discretion of the court. But that discretion should always be exercised consistently with the settled rules of equity, and with due regard to the rights of others who are interested in the trust property, and are not before the court. It may be that in cases of urgent necessity, admitting of no delay, the court can, for the protection and preservation of trust property in the custody of its receiver, authorize him to borrow money, and give certificates to be made a charge upon the property. Those, however, who take receiver's certificates, must be deemed to have taken them *subject to the rights of parties who have prior liens upon the property,* and *who have not, but should have, been brought before the court.* While the court, under some circumstances, and for some purposes, and in advance of the prior lienholders being made parties, may have jurisdiction to charge the property with the amount of receiver's certificates issued by its authority, it cannot, without giving such parties their day in court, deprive them of their priority of lien. When such prior lienholders are brought before the court, they become entitled, upon the plainest principles of justice and equity, to contest the necessity, validity, effect, and amount of all such certificates, as fully as if such questions were then for the first time presented for determination. If it appears that they ought not to have been made a charge upon the property superior to the lien created by the mortgages, then the contract rights of the prior lienholders must be protected. On the other hand, if it appears that the court did what ought to have been done, even had the trustee and the bondholders been before it at the time the certificates were authorized to be issued, the property should not be relieved from the charge made upon it for its protection and preservation. Of

these rules or principles the parties who inaugurated this litigation cannot justly complain. They were not ignorant of the fact that there were existing mortgages upon this property, and that fact should have been brought to the attention of the court at the very outset. Nor have the bondholders any ground of complaint if the court charges upon the property such expenditures as now appear to have been rightfully made in the interest of all concerned in its management while in the hands of a receiver. As to receiver's certificates issued, with the sanction of the court, after the trustees became parties, the purchasers and holders should be accorded such rights as, by the settled principles of equity, are accorded to those who deal with judicial tribunals having full jurisdiction of the subject-matter and of the parties.

Coming, then, to the report of the special commissioner in respect of the various sets of receiver's certificates, I have to say that he has, in all substantial particulars, been guided by the principles I have indicated in this memorandum. His conclusions as to each series of certificates, from one to eighteen, inclusive, is approved. I also approve his conclusions as to "Floating Indebtedness," "Loan Account," "Accounts of Waring Bros.," "Report of Receiver Genis," and "Inventory."

10. In reference to the claim of an equitable lien in favor of judgment creditors, arising out of the assumption by the Peoria, Atlanta & Decatur Railroad Company of the bonded and floating indebtedness, respectively, of the Paris & Decatur Railroad Company and the Paris & Terre Haute Railroad Company, I do not think, despite the vigorous presentation by counsel of the opposite view, that the bonds issued by the Illinois Midland Railway Company constituted a trust fund for the benefit of the holders of the "bonded and floating indebtedness" of the grantor companies, or that the Peoria, Atlanta & Decatur Railroad Company took the property of the other companies burdened with an equitable lien in favor of judgment creditors or the "bonded and floating indebtedness" of the latter companies. Upon the sale in question the judgment creditors of the selling companies only acquired the further right of looking for payment to the purchasing company. They acquired no lien upon the property in virtue of the transfer, and the assumption of the bonded and floating indebtedness of the selling company.

11. In reference to the claim asserted in behalf of the Kansas Rolling-mill Company, called the "Stone Claim," it appears quite satisfactory that, in 1875, Hervey made an arrangement with Grant Bros. & Co., by which the latter assumed, for a valuable consideration, to pay this claim, amounting, at that time, to £30,700. For this debt Hervey was responsible. In pursuance or execution of this arrangement, Grant Bros. & Co. retained, out of the purchase money due from them to Hervey on a sale of bonds, the amount necessary to pay that claim. This appears in many ways, and distinctly in the

account current rendered by them to Hervey. Grant Bros. & Co., in view of this arrangement, made a promise directly to Stone to pay his draft for the amount of this claim, and Stone executed a release to Hervey, agreeing to look to Grant Bros. & Co. I do not state the case too strongly when I say that the evidence shows substantially an agreement between Hervey, Stone, and Grant Bros. & Co., by which Grant. Bros. & Co. agree to apply the bonds received from Hervey, so far as necessary, to the payment of Stone's claim, Stone to look to the bonds for payment, and discharge Hervey from personal liability to him. The facts and circumstances disclosed in the record leave no doubt in my mind of the correctness of this statement of the transaction. The purchase of these securities by Waring Bros. from Grant Bros. & Co. was with knowledge by the former of, and subject to, the equitable lien of Stone to have his claim satisfied out of those bonds. The papers which passed between Waring Bros. and Grant Bros. & Co. show an agreement upon the part of the former to hold the bonds subject to the lien; and I am of opinion that the lien of · Stone, or, rather, of the Kansas Rolling-mill Company, extends to all the bonds received by Waring Bros. from Grant Bros. & Co., which are described in the written proposition of the latter dated May 4, 1877.

Whether the company in its own right, or in the name of Stone, is entitled to a personal judgment in the suit against Waring Bros., for any balance that may remain unpaid of the Stone claim (after applying the aforesaid securities) to the discharge of that claim, need not be decided at this time. That question is reserved until it shall become necessary to determine it.

If I have not misapprehended the state of the voluminous, and, in some respects, confused, record before me, all has been said which it is now proper to say touching the questions argued by counsel. As I am not sure what one of the numerous counsel engaged in this case should be required to prepare the orders which this memorandum of conclusions will make it necessary to enter, the duty of preparing them is imposed upon Special Commissioner Branson. The admirable and exhaustive report made by him shows his entire familiarity with the case, and his fitness for this work.

12. There will be found on page 964 of the printed copy of record an order presented to me on the seventh of July, 1883. Leave was then asked, *ex parte*, to have it entered. I declined to do so without notice to all concerned, or to dispose of the matter until the case was fully argued. That order may now be entered, or embodied in the orders directed to be drawn. If those opposed to the entering of any such order prefer that the leave asked shall be granted *on condition* that all the allegations of the answer and cross-bill referred to shall be deemed controverted on the record without further pleadings, that condition may be imposed. It is a just condition, in view of the delay which has occurred.