COMMISSIONER OF INSURANCE *v.* LLOYDS INSURANCE CO.
OF AMERICA, INC.

1. APPEAL AND ERROR—CHANCERY APPEAL—STATUTES.
   Appeal from a chancery decree or order is a statutory right (3
   Comp. Laws 1929, § 15508).

2. SAME—APPEAL OF RIGHT—FINAL ORDERS.
   An appeal of right is proper only from a final chancery judg-
   ment or order.

3. SAME—RIGHT TO APPEAL—EFFECT OF ORDER.
   The right to appeal is determined not by the form of the chan-
   cery order or decree, but by its effect (3 Comp. Laws 1929,
   § 15508).

4. SAME—FINAL ORDER—LEAVE TO APPEAL UNNECESSARY.
   If an order may finally dispose of a portion of the subject mat-
   ter in controversy, it is a final order and leave to appeal need
   not be obtained.

5. SAME—TRANSFER OF MICHIGAN ASSETS TO NEW YORK COURTS—
   FINAL ORDER.
   Order authorizing Michigan receiver to transfer assets of New
   York corporation to jurisdiction of New York courts conclu-
   sively determines rights of Michigan creditors to relief out of
   the assets in Michigan courts and is, therefore, final as to cer-
   tain rights of Michigan creditors and leave to appeal was
   unnecessary (3 Comp. Laws 1929, § 15508).

6. CORPORATIONS—SALE OF ALL ASSETS—CREDITORS.
   The corporate purchaser of all the assets of a corporation receives
   them subject to the rights of creditors of the transferring cor-
   poration.

7. SAME—PURCHASER OF ALL ASSETS HOLDS SUBJECT TO DEBTS AND
   AS TRUSTEE.
   The transfer of the entire assets of a Michigan corporation to a
   New York corporation is subject to the rights of creditors of
   the transferor and transferee holds the assets subject to debts
   and as trustee for creditors.

8. RECEIVERS—FOREIGN—IMPOSITION OF CONDITIONS WHEN ASSETS TRANSFERRED TO HIM.

A receiver appointed in a foreign State has no extraterritorial jurisdiction and a trial judge may impose conditions upon him when Michigan assets are transferred to him.

9. CORPORATIONS—INSURANCE—TRANSFER OF ASSETS TO FOREIGN LIQUIDATOR—ABUSE OF DISCRETION.

Trial court who failed to impose conditions upon New York liquidator of an insurance company so as to preserve rights of Michigan creditors in assets ordered transferred and who failed to ascertain that they would receive adequate protection in New York *held,* to have abused his discretion in ordering such transfer.

Per WIEST, BUSHNELL, SHARPE, POTTER, CHANDLER, and NORTH, JJ.

10. INSURANCE—FOREIGN COMPANIES—DOING BUSINESS IN THIS STATE.

A foreign insurance company may be permitted to do business in this State upon compliance with the laws of this State providing it receives the approval of the commissioner of insurance.

11. SAME—FOREIGN COMPANIES—COMITY.

Whether or not a foreign insurance company shall be permitted to do business within this State depends upon the comity existing as a part of the public policy of this State in relation to foreign insurance companies.

12. SAME—FOREIGN COMPANIES—PROPERTY IN THIS STATE—CREDITORS.

The property of a foreign insurance company located within this State is primarily a trust fund for the benefit of the creditors of that company within the State in case it becomes insolvent and the comity existing between States should not be extended so far by judicial construction by courts of this State as to sacrifice the rights of such creditors to have their claims satisfied against such property to the rights of creditors outside the State.

Per BUSHNELL, SHARPE, POTTER, CHANDLER, and NORTH, JJ.

BUTZEL, C. J., and McALLISTER, J., dissenting.

Appeal from Ingham; Carr (Leland W.), J.   Submitted October 11, 1938.   (Docket No. 106, Calendar No. 40,220.)   Decided February 2, 1939.

Bill by Charles E. Gauss, Commissioner of Insurance of the State of Michigan, against Lloyds Insurance Company of America, Inc., a New York corporation, for a receiver.   On petition of the receiver for approval of agreement transferring assets to New York liquidator.   Objections by B. C. Schram, receiver of First National Bank-Detroit.   From order allowing transfer, objector appeals.   Reversed and remanded.

*Ross D. Thompson,* for Michigan receiver.

*Handy & Snyder,* for New York liquidator.

*Robert S. Marx, Carl Runge, Thomas L. Conlan,* for objector.

SHARPE, J.   In August, 1932, the Detroit Fidelity & Surety Company, a Michigan corporation, the Constitution Indemnity Company of Philadelphia, a Pennsylvania corporation, and Lloyds Casualty Company, a New York corporation, entered into an agreement of merger and consolidation forming Lloyds Insurance Company of America, a New York corporation.   All of the assets of the three constituent corporations were transferred to the resulting corporation; the stockholders of the old corporations exchanged their stock for stock in the new corporation and the new corporation assumed all the liabilities and obligations of the three original corporations.

Prior to the mentioned merger, the Detroit Fidelity & Surety Company had underwritten two fidelity bonds for the American State Bank of Detroit

against loss occasioned by the dishonest acts of its employees. Defalcations were discovered and the First Wayne National Bank of Detroit as successor to the American State Bank of Detroit commenced suit in Wayne county on the bonds. In July, 1932, the suit was removed to the Federal court at Detroit. In October, 1932, the name of the First Wayne National Bank of Detroit was changed to First National Bank-Detroit and in May, 1933, C. O. Thomas was appointed as its receiver.

In August, 1933, Charles E. Gauss, commissioner of insurance of Michigan, filed a bill of complaint in the circuit court of Ingham county asking that a receiver be appointed for Lloyds Insurance Company of America due to its insolvency; and that the receiver take possession of and collect all assets of Lloyds Insurance Company within the State of Michigan. Following this action on the part of the Michigan insurance commissioner and on August 16, 1933, an order was entered by the circuit judge of Ingham county granting the relief asked for in the bill of complaint. On the same day, August 16, 1933, that the Michigan receiver was appointed, an order of liquidation was entered in the supreme court of New York declaring Lloyds Insurance Company of America to be insolvent. The superintendent of insurance of New York was appointed liquidator of the domestic corporation and February 16, 1934, was set as the final date for all creditors to file their claims. In October, 1933, the Michigan receiver filed a petition in the circuit court of Ingham county praying for authority to enter into an agreement with the superintendent of insurance of New York whereby the Michigan assets of Lloyds Insurance Company would be transferred to the New York department of insurance. The proposed agreement pro-

vided for the filing of claims with either the Michigan or New York receiver on or before February 16, 1934. When this petition came on for hearing before the trial judge, it was denied.

On December 14, 1934, the Federal court entered judgment for the sum of $250,000 in favor of the First National Bank-Detroit and on the same day B. C. Schram as receiver of the First National Bank-Detroit filed proof of claim in the Michigan Lloyds receivership proceedings. This claim was allowed by the trial judge.

On October 20, 1934, an order was entered which provided that all persons having claims against Lloyds must file proof of their claims with the Michigan receiver on or before December 15, 1934. On January 30, 1935, the superintendent of insurance of New York filed a petition to intervene in the Michigan proceedings. This petition was granted on February 5, 1935. In November, 1937, the Michigan receiver filed a petition in the Ingham circuit court praying for authority to enter into an agreement with the New York liquidator, the purpose of which was to transfer the Michigan assets of Lloyds in receivership to the New York department of insurance.

The appellant, receiver for the First National Bank-Detroit, entered his appearance in opposition to the granting of this petition. When the cause came on for hearing, it developed that the total income of the Michigan receiver was the sum of $91,407.58 and the total expenditures were $48,320.27; that the principal asset of the Michigan receiver is the home office building, carried on the books of the company at a valuation of $375,000; a real estate mortgage in the sum of $22,000; $10,000 city of Birmingham bonds; a trust certificate in the sum of

$998.42; and a bank balance as of November 1, 1937, of $43,087.31. It was also developed that a three per cent. dividend was paid by the New York department of insurance to policyholders who filed claims in the New York proceedings; that six reports had been filed in the New York courts by the New York department of insurance, but no testimony was given as to the value of the Lloyds assets under the New York liquidator's control or any facts concerning any phase of the New York liquidation. At this hearing, appellant made a motion to dismiss the petition to transfer the Michigan assets to the New York liquidator until such time as definite facts could be produced by the Michigan receiver and the New York liquidator. This motion was denied and on March 9, 1938, an order was entered authorizing the Michigan receiver to enter into an agreement with the New York department of insurance to transfer the Michigan assets of Lloyds to the New York department of insurance, a copy of said agreement being as follows:

"Agreement made and entered into this ........ day of .........., 1938 between Horace B. Corell, receiver of the assets and property of the Lloyds Insurance Company of America, Inc., located within the State of Michigan, hereinafter referred to as 'receiver,' and Louis H. Pink, superintendent of insurance of the State of New York, as liquidator of Lloyds Insurance Company of America, Inc., by Milton O. Loysen, duly appointed special deputy superintendent of insurance in charge of the liquidation of said company, hereinafter referred to as 'liquidator;'

"Whereas, by an order of the supreme court of the State of New York, entered in the office of the clerk of the county of New York, on the 16th day of August, 1933, the Lloyds Insurance Company of

America, Inc., a New York insurance corporation, was declared insolvent and its charter was dissolved, and the liquidator directed to take possession of its property and to liquidate its affairs pursuant to article 11 of the insurance law of the State of New York; and

"Whereas, by an order dated August 16, 1933 of the circuit court of the State of Michigan, in and for the county of Ingham, Horace B. Corell was appointed receiver of Lloyds Insurance Company of America, Inc., and directed to take possession of all the property and assets of said company located within the State of Michigan; and

"Whereas on the 9th day of March, 1938, an order was duly made and entered in the circuit court of the State of Michigan, in and for the county of Ingham, authorizing and empowering the said Horace B. Corell, receiver, to enter into an agreement with the liquidator for the transmission of the Michigan assets by the receiver to the liquidator in return for which the liquidator will recognize claims filed in the Michigan court and give them the same force and effect as claims properly filed and allowed in the New York liquidation proceedings.

"Now, therefore, in consideration of the mutual promises herein contained, the parties hereto respectively agree as follows:

"1.   The receiver will immediately, after deducting the administration expenses of the Michigan proceeding as determined by the court in charge of that proceeding, remit, assign and transfer to the liquidator all assets of Lloyds Insurance Company of America, Inc., which now are, or which hereafter may come, within his possession or control, saving and excepting the sum of $3,000, which the receiver shall retain in his possession until administration of the estate has been completed in the State of Michigan, out of which sum the receiver shall pay such administration expenses as have accrued or may ac-

crue pursuant to the order of the circuit court for the county of Ingham and State of Michigan.

"2. The liquidator will accept the final determination and allowance which has been, or will be made, by the receiver and the Michigan court in charge of the Michigan proceeding on the claims set forth in the schedule hereto annexed, made a part hereof and marked Exhibit 'A' (not exceeding the amounts therein set forth); and will make dividend distribution to said claimants on the basis of the amounts allowed by the Michigan receiver and approved by the Michigan court, along with and like all other allowed claims of the same class in the New York liquidation proceedings; provided, however, that if any Michigan claimant has filed his claim both in the Michigan proceedings and in the New York liquidation proceeding, upon which a dividend has been paid by the New York liquidator, such claimant shall not be entitled to a further dividend by the liquidator, until and unless all other claimants or creditors of the same class have received a dividend equal in amount to the dividend which such claimant has already received.

"3. All expenses, fees, disbursements and debts incurred in the administration of the Michigan receivership are to be payable only out of the Michigan assets, and no claim for any part of such expenses, fees, disbursements and debts may be asserted against the liquidator or against the assets of Lloyds Insurance Company of America, Inc., in New York.

"4. The liquidator will immediately after the execution of this agreement by the parties hereto, apply to the Supreme Court of the State of New York, in and for the county of New York, for an order approving same; and this agreement shall not become effective until and unless such an order is made."

Claimant appeals and contends that where the stock of a new corporation is the sole consideration

received for the old company's assets, the assets transferred to the new corporation are impressed with a trust for the benefit of the creditors of the old corporation; and that assuming that the Michigan receivership is ancillary to the New York receivership it was an abuse of judicial discretion on the part of the trial court to order the transfer of the local assets of Lloyds to the New York receivership where there was no showing of the status of the primary or ancillary trust, or no showing that the transfer would be beneficial, or at least not detrimental to the Michigan creditors of Lloyds.

Prior to the hearing of this cause in the Supreme Court, a motion was made to dismiss appellant's appeal upon the theory that such appeal was from an interlocutory order entered by the trial judge and contrary to Court Rule No. 60 (1933).

Appeal from a chancery decree or order is a statutory right, 3 Comp. Laws 1929, § 15508 (Stat. Ann. § 27.2608); an appeal of right is proper only from a final judgment or order, *In re Widening Woodward Avenue,* 265 Mich. 87; the right to appeal is determined not by the form of the order or decree, but by its effect, *Perrin* v. *Lepper,* 72 Mich. 454. In *Equitable Trust Co.* v. *Bankers Trust Co.,* 268 Mich. 394, we held that if the order might finally dispose of a portion of the subject matter in controversy, it is a final order and leave to appeal need not be obtained.

The order appealed from relates in part as follows:

"It is further ordered that the receiver herein be and he hereby is authorized to do any and all necessary acts to accomplish the intents and purposes of said agreement without the further order of this court."

The effect of the order complained of is to transfer the assets to the jurisdiction of the courts of the State of New York and conclusively determines the rights of Michigan creditors to relief out of the assets in the courts of Michigan. The order appealed from was final as to certain rights of Michigan creditors and leave to appeal was unnecessary.

It is the claim of appellee that it is the duty of an ancillary receiver to transmit assets to the receiver acting in the domicile of a foreign corporation; and that it is the duty of the Michigan receiver to assist the New York liquidator who is the only proper person to dissolve the defendant company.

In the case at bar a judgment in the sum of $250,000 was secured against the Detroit Fidelity & Surety Company upon its bonds. The claim upon which this judgment arose occurred before the agreement of consolidation was perfected. Under these facts, the claimant was a creditor of the Detroit company prior to the consolidation. It is a general rule in Michigan that where a corporation transfers all of its assets to another corporation, the purchaser of those assets receives them subject to the right of creditors of the transferring corporation.

In *Grenell* v. *Detroit Gas Co.*, 112 Mich. 70, we said:

"Under such circumstances, we think a legitimate inference is that the purchase was made subject to the application of so much of the property as might be necessary to the payment of the debts of the Michigan Gas Company, if not with the understanding that all debts should be paid by the purchaser. *Berry* v. *Railroad Co.*, 52 Kan. 774 (36 Pac. 724, 39 Am. St. Rep. 381). Again, a corporation cannot sell all of its property, and take in payment stock in a new corporation, under an arrangement that has the

effect of distributing the assets of the vendor among its stockholders, to the exclusion and prejudice of its creditors; and a company making such purchase, in consideration of an issue of its own stock to such stockholders, takes the property subject to the rights of creditors. Such an arrangement is a diversion of the trust fund.

"It is said that there is nothing to show an intention to defeat the creditors of the Michigan Gas Company, as this was not a liquidated claim at the time this transfer was made. See *Schaible* v. *Ardner*, 98 Mich. 70. Under the arrangement, the promoters and stockholders of the Detroit Gas Company knew that it was getting all of the property of the Michigan Gas Company, without provision for its debts, if there were any. It was bound to know that this property was charged with such debts, and ought not to be distributed among the stockholders to the exclusion of creditors. It was a party, then, to a diversion of the trust fund, and, having in its possession such fund, holds it subject to the payment of debts. It cannot be called a *bona fide* purchaser of the property, as against existing creditors."

Under the authority of the *Grenell Case, supra,* the transfer of the assets of the Detroit company to Lloyds Insurance Company was made subject to the rights of the creditors of the Detroit company and under the authority of *Fisk* v. *State Savings Bank of Ann Arbor,* 225 Mich. 580, the new corporation held the assets subject to debts and as trustee for creditors.

Appellant claims that the record fails to show sufficient facts from which the court can be assured that if the assets are transferred to the New York liquidator, the Michigan creditors will receive the protection they are entitled to. It is to be noted that the New York liquidator promises to make equal dis-

tribution of dividends to the Michigan creditors with all creditors of the same class.

An examination of the record fails to show the value of the assets in the hands of the New York liquidator nor does it show the value of the assets in the hands of the Michigan receiver. The record speaks of an office building in the city of Detroit with a book value of $375,000, but this building is subject to a real estate mortgage, the amount of which is not stated. In *Commissioner of Insurance v. National Life Ins. Co. of United States of America*, 280 Mich. 344, we held that a receiver appointed in a foreign State had no extraterritorial jurisdiction; and that a trial judge may impose conditions upon a foreign receiver when Michigan assets are transferred to him. In the case at bar, the trial judge failed to impose conditions upon the New York liquidator that would preserve the rights of the receiver of the First National Bank-Detroit against the Detroit Fidelity & Surety Company in the manner hereinbefore mentioned. The record is insufficient to make such a determination. It was an abuse of judicial discretion to order the transfer of Michigan assets to the New York liquidator without first having ascertained that the Michigan creditors would receive adequate protection in the foreign jurisdiction.

The decree of the trial court is reversed and the cause referred to the trial court for further proceedings in harmony with this opinion. Appellant may recover costs.

WIEST, BUSHNELL, POTTER, CHANDLER, and NORTH, JJ., concurred with SHARPE, J.

POTTER, J. (*concurring*). Lloyds Insurance Company of America, Inc., is a New York corporation.

It was authorized to continue to do business within the State of Michigan. It had assets in this State. A judgment was rendered upon its contract liability within the State of Michigan. It became insolvent and a New York receiver was appointed and a receiver was appointed in the State of Michigan.

A foreign insurance company may be permitted to do business in the State of Michigan upon compliance with the laws of this State, providing it receives the approval of the commissioner of insurance of this State. It has no right to do business within the State without compliance with the laws of the State. Whether it shall be permitted to do business within Michigan or not depends upon the comity existing as a part of the public policy of this State in relation to foreign insurance companies.

The property of a foreign insurance company located within the State of Michigan is primarily a trust fund for the benefit of the creditors of that company within the State in case it becomes insolvent. The comity existing between States should not be extended so far by judicial construction by the courts of this State as to sacrifice the rights of creditors in this State to have their claims satisfied against the funds and property of the company within this State to the rights of creditors outside the State. Suppose, under the facts which may be developed in this case, the assets of the Lloyds Insurance Company of America, Inc., within this State are sufficient to satisfy the creditors of such corporation within this State in full. If the courts of this State direct the surrender of this property to the receiver of the foreign corporation appointed in the State of its creation and compel such creditors to present their claims in such general receivership and

upon liquidation the company in the State of its creation can pay but 10 cents on a dollar, then by judicial comity the rights of creditors within this State have been sacrificed for the benefit of creditors outside the State.

I am in favor of protecting the interests of Michigan creditors, satisfying the claims of such creditors, duly proved, out of the assets of the company within the State of Michigan, in pursuance of the laws of this State, and I am not in favor of sacrificing the rights of the creditors of the corporation within this State to the rights of creditors outside of the State in pursuance of any rule or pretended rules of comity.

It makes no difference whether the claimed liability of the defendant insurance company arose prior to its organization by the consolidation of the companies from which it was formed or not. The defendant insurance company took the assets and assumed the liabilities of the corporations consolidated. It is immaterial, in my opinion, whether there is any specific statute regulating this question or not. When a foreign insurance company comes into this State, it may come here and do business only with the approval of State authorities. It must subject its assets within this State to the jurisdiction of the State, to be governed by the local law; and when it becomes insolvent, its assets within this State should be properly administered in accordance with the local law and the creditors of the company within the State of Michigan should have their rights protected in pursuance of the local law. Comity as an abstract proposition is entitled to consideration, but it should not be used as an instrument to sacrifice

the rights of the creditors of the company within this State.

For that reason, I concur with the opinion of Mr. Justice SHARPE.

BUSHNELL, SHARPE, CHANDLER, and NORTH, JJ., concurred with POTTER, J.

BUTZEL, C. J. (*dissenting*). I am not in accord with the foregoing opinions. In addition to the facts therein set forth, it should be stated that with the appointment of the Michigan receiver for Lloyds, August 16, 1933, ''to assist'' the New York liquidator ''in the liquidation of defendant company,'' an injunction was issued ''restraining any and all persons from bringing or further prosecuting any action at law or suit in equity'' against the company.

On June 5, 1934, the bank secured an order modifying this injunction to enable it to prosecute to judgment its original action on the fidelity bonds. Such suit was then pending in the Federal court for the Eastern District of Michigan. August 20, 1934, the Michigan receiver petitioned the Ingham circuit court for authority to execute an agreement with the receiver of the First National Bank of Detroit to compromise and settle the judgment against the Detroit Fidelity & Surety Company. The petition bore the approval of the commissioner of insurance of the State of Michigan. An order was entered authorizing the Michigan receiver to execute the agreement and the agreement was signed by him and the bank receiver, and provided in part that if a judgment of $250,000 or more is rendered against the Detroit Fidelity & Surety Company in the suit in the Federal court, then said judgment up to $250,000

shall be allowed as a general claim against the Lloyds Company in the Michigan receivership proceedings. The judgment was rendered on December 14, 1934. The receiver of the First National Bank of Detroit thereafter filed proof of claim in the sum of $250,000 in the Ingham circuit court. The claim has been allowed in full.

The record contains no statement of the assets that passed to the New York liquidator, appointed under the New York statute, nor of the amount of the claims that have been filed in the liquidation proceedings. The representative of the New York liquidator stated that he hoped to pay from 7 to 10 per cent. of the claims of the policyholder class, and 4 to 7 per cent. to nonpolicyholders; that claims of the policyholder class have already received a dividend of 3 per cent., and that there is sufficient cash available to pay a 3 per cent. dividend to Michigan creditors. The latter have filed claims in the Michigan proceedings aggregating upwards of $1,000,000. The record indicates that if the proceeds from the sale of the assets of the Detroit Fidelity & Surety Company were used solely to pay the former creditors of that company, the latter would receive an amount in excess of the amount that will be paid by the New York liquidator. The exact amount that will be available cannot be determined from the record.

I am mindful of the general rule that a corporation cannot avoid its liabilities by transferring all its assets to another corporation without making provision for payment of its debts. *Grenell* v. *Detroit Gas Co.*, 112 Mich. 70. In the instant case, the consolidated company made express provision for the debts of the constituent companies by agreeing to pay them off as its own, and the problem is simply the

relative standing of the creditors. While the assets of a corporation have been likened to a trust fund for the benefit of creditors, the limitations of the analogy should not be forgotten. As is said in *Fogg* v. *Blair,* 133 U. S. 534, 541 (10 Sup. Ct. 338):

"That doctrine only means that the property must first be appropriated to the payment of the debts of the company before any portion of it can be distributed to the stockholders; it does not mean that the property is so affected by the indebtedness of the company that it cannot be sold, transferred, or mortgaged to *bona fide* purchasers for a valuable consideration, except subject to the liability of being appropriated to pay that indebtedness."

The doctrine does not prevent a corporation owning property from passing title to such property to a consolidated corporation. See *Wabash, St. L. & P. R. Co.* v. *Ham,* 114 U. S. 587 (5 Sup. Ct. 1081); *Francklyn* v. *Sprague,* 121 U. S. 215 (7 Sup. Ct. 951); *Hervey* v. *Railway Co.,* 28 Fed. 169; *Thrower* v. *Kistler,* 14 Fed. Supp. 217. Nor does it prevent treatment of all the general creditors on an equal basis. See *State* v. *American Bonding & Casualty Co.,* 213 Iowa, 200 (238 N. W. 726); *Blake* v. *Domestic Manfg. Co.,* 64 N. J. Eq. 480 (38 Atl. 241). See, also, *Lamkin* v. *Baldwin & Lamkin Manfg. Co.,* 72 Conn. 57, 62 (43 Atl. 593, 1042, 44 L. R. A. 786) where the creditors of the consolidated company were even given a preference.

There is nothing in *Fisk* v. *State Savings Bank of Ann Arbor,* 225 Mich. 580, contrary to these principles. It was there held that a creditor "had a right to follow the property (real estate) to the new corporation, if it passed there, or levy on it as property of its judgment debtor inasmuch as title stood of

record in such debtor's name." Statements that the creditors of one company cannot be compelled without their consent to release their claims and look to another company to pay the former's debts must be read in the light of the transactions to which they apply. Such relief has been given in transactions which are in fraud of creditors, or result in the impairment of the obligation of a contract. There is here no claim of fraud, and the wisdom of the consolidation is not before us. It is significant that the bank voiced no objection to the plan at the time.

One insurance company, however, may, in the manner provided by law, be consolidated with another company with the consent of the insurance commissioner. 3 Comp. Laws 1929, § 12310, as amended by Act No. 163, Pub. Acts 1931 (Comp. Laws Supp. 1935, § 12310, Stat. Ann. § 24.89). The nature of the insurance business is such that, to preserve the rights of policyholders and other creditors, consolidations frequently are necessary to enable a weak company to join with a strong one or several weaker companies to combine to form a stronger one. To allow a preference to general creditors of the constituent companies nullifies the whole purpose of the consolidation which the legislature has expressly sanctioned, and which, in this instance, the commissioners of insurance of three states have approved. The Detroit Fidelity & Surety Company and its policyholders were subject from the time their policies were obtained to the insurance law of this State which provided for consolidations and the means by which they could be brought about.

Prior to the consolidation, the bank's receiver had secured no lien or preference against the assets of the Detroit Fidelity & Surety Company by garnishment, attachment, or other method. In fact, it was

only through leave of the Michigan court, which had appointed the receiver in aid of the New York liquidation proceedings, that the bank's receiver was permitted to prosecute his claim to judgment. And after securing that judgment, it was filed as a claim against Lloyds with the court's permission. It was filed without reservation. After electing to look to the assets of the consolidated company, the receiver is clearly precluded from asserting his judgment against the assets of the Detroit Fidelity & Surety Company. See, *State* v. *American Bonding & Casualty Co., supra.* The result so reached fully accords with the policy of this State in the liquidation of insurance companies operating in several States. We said in *Baldwin* v. *Wayne Circuit Judge,* 101 Mich. 119, 134:

"The receiver appointed in Indiana and the ancillary receiver appointed here not only represent the creditors of the corporation, but stand in its stead; and under the decree of the Indiana court and of the Wayne circuit court, in chancery, in this State, they are directed to gather in the assets. Unless some reason is shown why that order should not be carried out, this local branch and its officers and members cannot refuse to turn over the assets to the ancillary receiver; and, when he has possession of such assets, the court may order them transmitted to the Indiana receiver. But such order should be made only when it is made certain to the court that the members of this State will share proportionately with the other members throughout the organization. The fund is found in many different States, and comity requires that we should do all we can to insure, as far as possible, a speedy distribution of the whole property among those entitled to it. But the court below must have some discretion in making this order so that the rights of the citizens of this State may be protected."

In the exercise of such discretion the circuit judge ordered the Michigan assets remitted to the New York liquidator. I cannot agree that under it Michigan creditors are denied the protection they deserve. The agreement between the two receivers expressly provides that the New York liquidator "will accept the final determination and allowance which has been, or will be made, by the receiver and the Michigan court in charge of the Michigan proceeding * * * and will make dividend distribution to said claimants on the basis of the amounts allowed by the Michigan receiver and approved by the Michigan court, along with and like all other allowed claims of the same class in the New York liquidation proceedings."

The agreement is not to become effective until the supreme court of the State of New York gives its approval to its provisions. This, it would seem, is the most effective "condition" which could be imposed upon the New York liquidator and assures Michigan creditors of complete equality.

The order of the circuit court should be affirmed, but without costs, a public question being involved.

McAllister, J., concurred with Butzel, C. J.